In the Matter of the ESTATE OF Jerome F. TEGELER, Deceased,

Helen TEGELER, Appellant,

v.

The ESTATE OF Jerome F. TEGELER, Deceased, and Guardian ad Litem of Tiffany Tegeler, a Minor, Respondents.

No. 48158.

Missouri Court of Appeals, Eastern District, Division Two.

April 2, 1985.

Hullverson, Hullverson & Frank, Inc., Thomas C. Hullverson, Philip C. Denton, St. Louis, for appellant.

Charles M. Carrigan, Willson, Cunningham & McClellan, St. Louis, for respondents.

SIMON, Presiding Judge.

Appellant Helen Tegeler elected to take against the will of her deceased husband Jerome F. Tegeler over the objection of respondents, the estate of Jerome F. Tegeler and the guardian ad litem of Tiffany Tegeler. Appellant appeals from the judgment of the probate division of the Circuit Court of the City of St. Louis in a bench tried case in which the trial court determined a postnuptial separation agreement between appellant and her husband barred her right of election to take against his will. We affirm.

On appeal, appellant contends that the trial court erred in finding: (1) the postnuptial separation agreement constituted a valid waiver of her right to take against her husband's will because husband had not fully disclosed the extent of his assets; (2) her receipt of benefits under the separation agreement for ten years estopped any challenge by her to its validity; and (3) evidence she offered on the value and ownership of certain assets was inadmissible.

On review, we determine whether the judgment is supported by substantial evidence and is not against the weight of the evidence, and whether the court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Wife's first point contends the trial court erred in finding that there had been full disclosure by her husband of his assets to support a valid waiver in the postnuptial separation agreement of her right to take against her husband's will. Wife does not deny that a disclosure of assets was made, but contends full disclosure did not occur in accord with § 474.220 RSMo 1978. Section 474.220 provides as follows:

> Waiver of a right to elect—The right of election of a surviving spouse hereinbefore given may be waived before or after marriage by a written contract, agreement or waiver signed by the party waiving the right of election, after full disclosure of the nature and extent of the right, if the thing or the promise given to the waiving party is a fair consideration under all the circumstances. This written contract, agreement or waiver may be filed in the same manner as hereinbefore provided for the filing of an election.

The Missouri Supreme Court in *The Estate of Youngblood v. Youngblood*, 457 S.W.2d

750, 754 (Mo. banc 1970), states that one of the statutory requisites of a valid waiver of the right to elect is "a full disclosure of the nature and extent of the right being waived; this requires disclosure of the nature and extent of the property interests of the ... spouses, or knowledge equivalent to such disclosure." No satisfactory rule as to the sufficiency of disclosure or equivalent knowledge can be formulated in concrete terms for this is ordinarily dependent upon the circumstances of the case. *Id.* at 757. The sufficiency of disclosure is a subjective matter. *Id.* If the parties stand in a relatively equal bargaining position and the spouse knows or should know facts sufficient to enable him or her to evaluate the agreement, then the contract may be valid even though the provisions for the survivor are grossly disproportionate to the deceased spouse's means. *Id.* The ultimate inquiry is whether the surviving spouse against whom enforcement of the agreement is sought has been defrauded or overreached. *Id.* at 756. So long as the surviving spouse had full knowledge, actual or constructive, of the other's property and the survivor's rights therein, the agreement is not invalid merely because the provision for the waiving spouse is less then the survivor would have received in the absence of the provision. *Hosmer v. Hosmer*, 611 S.W.2d 32, 35[1] (Mo.App.1980). While it may well be preferable to recite in the agreement all property owned by both parties ..., failure to do so is not fatal to an agreement. *Roberts v. Estate of Roberts*, 664 S.W.2d 634, 637[1] (Mo.App.1984). When an agreement fails to completely itemize the property of the ... spouses, evidence may be received to demonstrate that the parties in fact had knowledge of each other's property. *Id.* [2]. Ordinarily, inadequate provision for waiving spouse raises a presumption of fraud and concealment, throwing the burden of proving the absence of fraud and concealment upon the husband or those claiming under him. *Jones v. McGonigle*, 327 Mo. 457, 37 S.W.2d 892, 894[3] (Mo.1931).

Against this legal backdrop, we examine the record on appeal to determine whether there was substantial evidence to support the trial court's finding that appellant had full knowledge, actual or constructive, of her husband's property to uphold the validity of her waiver of her right of election to take against the estate. Jerome Tegeler ("husband") and appellant ("wife") married in 1947. In 1968 they separated and each obtained separate counsel. Wife's attorney filed a divorce action in her behalf. Property settlement negotiations were entered into and much correspondence was exchanged between their attorneys. The record indicates this information, admitted as exhibits at trial, included several letters, as well as five pages of financial data listing securities, liabilities and assets concerning husband's interests in various real property and in Dempsey-Tegeler & Co., Inc., a securities firm in which he was a partner. However, these exhibits are not included in the record on appeal. The separation agreement was executed on October 1, 1970. During the two year period between the separation and the execution of the separation agreement, husband, who had risen from a bonds salesman at a local bank to the head of one of the top ten brokerage firms in the United States, experienced tremendous financial difficulty. Dempsey-Tegeler & Co., Inc., his securities firm, was shut down by the New York Stock Exchange and the Securities Exchange Commission and liquidated in August 1970. Prior to August 1970, the New York Stock Exchange suspended husband from participation in any of the business affairs of Dempsey-Tegeler, and instituted proceedings to bar him from participating in any brokerage business. The Internal Revenue Service asserted claims of over two million dollars against husband for tax deficiencies from 1964 to 1969. In the midst of these financial travails, the first separation agreement proposed by wife's attorney was reviewed by husband's counsel who made some changes. The final separation agreement which the parties executed in October 1970 contained seven typewritten pages with an exhibit listing home furnishings attached. The agree-

ment provided that the parties desired to settle all rights to alimony, maintenance and support, all rights to real and personal property, whether jointly or singularly owned and all rights to dower, curtesy, inheritance and any other rights arising by reason of their marriage. The real estate interests listed showed only the marital residence which they agreed to sell; however, wife could reside there with husband paying the mortgage and general maintenance expenses until December 31, 1970, after which wife would be responsible for these expenses. A provision for their interests in personal property did not itemize personalty husband and wife owned. It merely stated wife's entitlement to any of the furniture or furnishings she desired in the marital residence. It also stated wife "shall be entitled to furniture [specified in attachment] located in an apartment in Palm Beach, Florida," with no further mention of the Palm Beach apartment. Wife was to keep the car already in her possession and to assign to her husband the one share of capital stock of Lake Sherwood Groves, Inc. held in her name. No further mention is made in the agreement of Lake Sherwood Groves, Inc. The agreement further provided for husband to pay wife monthly support of $1,500, and also $5,000 annually, until her marriage or death of either one of them. An additional lump sum amount, less certain proceeds from the sale, if any, of their furniture, was to be paid wife. We excerpt the pertinent portions of the separation agreement containing the mutual releases:

5. *Acceptance and Release by Wife.* Wife acknowledges that the foregoing provisions for her benefit are satisfactory, reasonable and adequate for her support and maintenance, past, present, and future, and in keeping with her accustomed mode of living, reasonable requirements, and station in life.

\* \* \* \* \* \*

7. *Waiver of Rights to Other's Estate.* Subject to the terms of this Agreement, each party waives, relinquishes and otherwise releases any right, interest or claim to the other's property, of whatsoever nature, real or personal, that he or she may now or hereafter have or acquire or be entitled to have by reason of the marriage of the parties and each party hereby further relinquishes, releases, and discharges any prospective rights of dower or curtesy and all other rights that he or she may now or hereafter have in and to the property and estate of the other, together with any and all statutory and common law rights that he or she may now or hereafter have ... by reason of the marriage of the parties.

\* \* \* \* \* \*

12. *Mutual Release.* Each party hereby releases and discharges ... the other of and from all cause or causes of action, claims, rights, or demands whatsoever, in law or in equity, which either of the parties hereto ever had or nor [sic] has against the other, except any and all claims or cause or causes of action for divorce.

13. *Knowledge and Consent.* Each party acknowledges that he or she is making this Agreement of his or her own free act and will and that there is no coercion, force, pressure, fraud or undue influence involved in the making and execution of this Agreement, either by the other party hereto or by any other person or persons. The parties further declare that each had individual legal counsel of his or her own selection and that the effects of this Agreement, legal, financial and practical, have been fully explained to each of them by his or her own counsel. Each party acknowledges that no representations have been made to induce the signing of this Agreement and that the entire understanding between the parties is incorporated herein.

14. *Agreement Binding Hereafter.* All covenants, conditions, provisions, stipulations, terms and agreements in this Agreement ... shall forever settle between the parties all rights to and interest in property of whatsoever nature, real and personal, and support, maintenance and other compensation that exists

or may hereafter exist by reason of their marriage; ...

The separation agreement made no representation that it constituted a full disclosure of the assets of either husband or wife. No financial statement of either party was attached to the agreement. Both husband and wife signed the agreement. The attorney for husband testified he did not remember any additional circumstances surrounding the signing, such as where the agreement was executed. There was evidence that in the years intervening from husband's initial financial disclosures in 1968 to the execution of the agreement in 1970 that husband's investments listed had increased slightly by 1970, but the value of those investments may not have increased. From October 1, 1970, to February 1981, husband paid wife $18,000 annually for support and maintenance. She also received additional payments amounting to $227,810.94.

After 1970, husband's financial position improved. The value of his interest in various pieces of real estate increased, and he received large sums of money from dividends, sale of various assets and consulting fees. Husband also benefited from large tax refunds and the application of a 3.8 million dollar capital loss carried forward and applied to his tax situation in the late 1970's. The trial court noted that wife was payee on such refunds based on her joint returns with decedent from 1968 to 1970.

Husband died on March 2, 1981. Although not in evidence before us, husband's will disposed of an estate with a net value of approximately three million dollars, according to wife's attorney during oral argument. Wife timely filed her election to take against the will pursuant to § 474.160 RSMo 1978. Respondents filed their motion to strike and set aside the election arguing wife had waived her right of election to take against the will in the separation agreement. After a two day hearing in the probate division of the Circuit Court of the City of St. Louis, the trial court entered lengthy findings of fact and decreed the separation agreement to be valid and constituted a valid waiver by wife of her right of election against husband's will.

▬▬ Wife disputes the finding of the trial court that she validly waived her right of election, arguing that husband failed to make full disclosure of the nature and extent of his assets when the separation agreement was entered into. The specific property interests and assets that wife contends were not fully disclosed or disclosed at all prior to and at the time of execution of the postnuptial agreement are: (1) Hobe Groves Associated, Ltd.; (2) Lake Sherwood Groves, Inc.; (3) Lake Side Farms, Inc.; (4) Sonic Development Co. stock; (5) $24,938.54 in cash; (6) capital loss carry forward of approximately 3.8 million dollars and a net operating loss of over one-quarter million dollars ($284,075.00); (7) the Tegeler Foundation; and (8) a Florida condominium. The gist of wife's argument is that she could not have understood what she was waiving unless she actually knew the net worth of her husband's property at the time she signed the separation agreement. Where wife has actual or constructive knowledge of husband's property, his failure to fully disclose the nature and extent of all his property does not invalidate her waiver. The statute requires "full disclosure of the nature and extent of the right" of election, not full disclosure of the nature and extent of the property interests of the spouse. The purpose of the statute is to insure that the wife is able to make an informed and intelligent election and thus prevent fraud and overreaching. Thus, the question is whether there was disclosure of the nature and extent of his property interests or knowledge by wife of facts sufficient to charge her with knowledge. *Accord, Youngblood*, 457 S.W.2d at 757. The trial court found wife had employed competent counsel to advise her of her rights and further she knew facts sufficient to charge her with knowledge of husband's means and the extent of his property. The court further found wife need not comprehend every detail of her husband's business dealings nor that each detail be disclosed to her

as long as she had substantial awareness of the extent of his property.

We agree with the trial court's assessment. By deposition admitted as a trial exhibit, but not before us, wife's attorney noted he had not examined his file and was not prepared to give detailed answers on questions of disclosure. He did recall that wife knew her husband was having trouble with his firms; knew of negotiations for tax refunds; knew about a penthouse apartment in Florida; and that she was a payee on tax refunds.

 Concerning husband's disclosure of his partnership interest in Hobe Groves, a Florida citrus grove, wife's attorney received federal and Missouri income tax returns which indicated Hobe Groves to be a non-income producing asset as of 1968. The capital deposits made by husband in Hobe Groves were set forth on the income tax returns filed for 1968 and 1969. While there is some dispute whether the balance sheets for Hobe Groves were made available to wife or her attorney, it is irrefutable that wife and her attorney were aware of the nature and extent of husband's interest in Hobe Groves. While further investigation of this asset might have shown whether it had substantial value, at least to the extent of husband's partnership interest, husband's disclosure was sufficient. The same evidence and conclusion applies concerning husband's interest in Lake Sherwood Groves, another Florida citrus grove. Husband disclosed the amount of cash he had invested in Lake Sherwood, but assigned no value to it or its net equity value. We see no misrepresentation or overreaching by husband based on the information he disclosed. Wife and her attorney were free to seek additional information to pinpoint husband's interest in these assets in more detail.

 Lake Side Farms, Inc. was reported each year on the parties' joint income tax returns. The 1968 tax return showed a net income of $190. We agree with the trial court's conclusion that wife, by signing the tax returns for 1966 through 1973

is charged with the details shown on such returns.

 Wife argues husband's purchase of $5,000 worth of Sonic Development Co. stock and his investment of nearly $25,000 cash in a short term U.S. treasury note were not fully disclosed assets. The only evidence concerning the stock was that 1000 shares were purchased in April 1970 for $5,000. The note was purchased in August 1970 and cashed out the same month. These transactions occurred during the two year period in the negotiation of the separation agreement. The source of these assets was not shown. Husband's business was the sale and exchange of stocks and bonds. In light of the nature of husband's business involving the conversion and exchange of assets and stocks on a daily basis, we cannot infer from the absence of a specific disclosure of these two assets that nondisclosure was deliberate or that wife lacked facts sufficient to charge her with constructive knowledge of these assets. While husband's disclosures were made in 1968, wife's attorney could have requested a current reassessment of the husband's respective liabilities and assets up to and including October 1970.

 Wife also lists husband's capital loss carry forward of approximately 3.8 million dollars and a net operating loss of over one-quarter million dollars ($284,-075.00) as items not disclosed to her. Her own expert, however, acknowledged these tax items had no value, unless they could be offset against taxable income. In light of the shaky condition of husband's financial status in 1970, particularly with the liquidation of husband's business in 1970, no guarantee existed that husband's future earnings would include sufficient capital gains for any tax benefits to redound to husband. Wife knew of the liquidation of husband's business and the tax problems. Although wife's attorney admitted he was unfamiliar with the potentially large financial gain likely to result from the capital loss carried forward and net operating loss, his position does not color our conclusion.

In 1970, the future value of these losses was purely speculative.

 Wife lists the Tegeler Foundation and a Florida condominium as undisclosed assets of husband. The tax returns for 1966, 1967 and 1968 provided to wife's attorney reflect husband made contributions to the Tegeler Foundation, a charitable foundation. Consulting fees husband later received from the foundation after the separation agreement had been executed have no relevance. Prior to the separation agreement's execution, husband had received no benefits to disclose from the foundation. We find wife's assertion that husband did not fully disclose the Florida condominium without merit in light of the separation agreement which specifically refers to furniture given to wife from the condominium. Wife's attorney admitted in his deposition he knew about the Florida penthouse. Wife's knowledge and her attorney's knowledge of the condominium defeat her claim of nondisclosure of assets by her husband.

The trial court record contains substantial evidence that § 474.220 RSMo 1978 requiring full disclosure of the nature and extent of the right of election was satisfied, in light of the disclosure and wife's knowledge of the nature and extent of her husband's property interests. Finding no evidence of fraud or overreaching, we find the agreement to be a valid waiver of her right of election. Therefore, we need not address wife's other points on appeal.

Judgment affirmed.

STEWART and GAERTNER, JJ., concur.