**In re the ESTATE OF Zane Harrison WHITE, Deceased.**

**Pauline WHITE, Respondent,**

v.

**Estate of Zane Harrison WHITE, Appellant.**

**No. 14627.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 15, 1986.

John Sims, Ruyle & Sims, Neosho, for respondent.

Robert M. Sweere, Springfield, for appellant.

PREWITT, Presiding Judge.

The decedent's widow, Pauline White, filed applications for support, for exempt property and for a homestead allowance, and notice of an election to take against decedent's will. Based on an antenuptial agreement, the estate opposed the applications and the election.[1] The trial court found that the agreement was invalid and entered an order in favor of Mrs. White. The estate appeals.

When the evidentiary hearing on the widow's application and notice of election commenced the trial judge sought the advice of the attorneys "as to order of procedure." Mrs. White's attorney stated that he felt

---

1. A portion of the agreement provided:

Upon the death of either party this contract shall fully discharge all rights of inheritance and all other statutory rights in the estate of the other, and neither shall have any interest, right, or claim in or to the estate of the other, by virtue of any law whatsoever, so that all of the estate of the first to die shall go and be disposed as if said party had continued single and unmarried, unless either party hereafter shall provide otherwise by inter vivos or testamentary instrument, and if there be such a will there shall be no right to elect to take against such will.

the burden of proof was upon "the party propounding the antenuptial agreement." The trial judge asked if the estate's attorney agreed with that and the attorney replied that he did.[2]

Following the estate's evidence, the widow's attorney moved for a directed verdict. As this was a nonjury matter, the trial judge apparently treated it as a motion to dismiss under Rule 67.02, and sustained it. Thereafter on December 5, 1985, "Judgment, Findings of Fact and Conclusion of Law" was filed.

The statute relevant here is § 474.220, RSMo 1978. It states:

> Waiver of right to elect.—The right of election of a surviving spouse hereinbefore given may be waived before or after marriage by a written contract, agreement or waiver signed by the party waiving the right of election, after full disclosure of the nature and extent of the right, if the thing or the promise given to the waiving party is a fair consideration under all the circumstances. This written contract, agreement or waiver may be filed in the same manner as hereinbefore provided for the filing of an election.

This section governs not only waiver of the right to elect under § 474.160, RSMo 1978, but also waiver of the other rights of a surviving spouse claimed here. *Roberts v. Estate of Roberts*, 664 S.W.2d 634, 637 (Mo.App.1984). Sections 474.120 and 474.-220, RSMo 1978, embody similar principles developed by case law and decisions under either are helpful in construing the other. *Estate of Hosmer v. Hosmer*, 611 S.W.2d 32, 35 (Mo.App.1980). Section 474.120 is set out below.[3] Generally, on the validity of agreements respecting these sections, see J. Blase, Validity of Antenuptial and Postnuptial Agreements in Missouri, 41 J. Mo. Bar 367 (1985); Comment, Antenuptial Contracts Determining Property Rights Upon Death or Divorce, 47 UMKC L. Rev. 31 (1978) (authored by Gayle S. Evans).

*Estate of Youngblood v. Youngblood*, 457 S.W.2d 750 (Mo. banc 1970), appears to be the leading case construing § 474.220. It states that this section first conditions the validity of a waiver of the right to elect to take against a will upon "full disclosure of the nature and extent of the right". This requires (1) "disclosure" or knowledge of the legal right of such nonelection, and 2) "disclosure" or knowledge of the property interests of the prospective spouses. 457 S.W.2d at 754. The latter is apparently required to make the knowledge of the right of election meaningful when considering whether to waive that right. See 457 S.W.2d at 756.

The trial court determined that there was no evidence that full disclosure had been made to the widow concerning the nature and extent of the rights waived under the antenuptial agreement; that there was no evidence of disclosure between the parties of the value, nature and extent of their property interests nor evidence of knowledge equivalent to such disclosure; and there was no evidence that the widow entered into the agreement "understandingly and with knowledge of what she stood to lose or gain."

Following the widow's motion for directed verdict, the trial court could have treated the case as if it was to be ruled on the merits as it then stood, and weighed the evidence, resolved conflicts, and on that basis ruled the motion. See *Cowan v. Cowan*, 637 S.W.2d 200, 201 (Mo.App.1982). However, the trial court did not do that. It determined that there was no evidence of

---

**2.** The attorney who represented the estate at that hearing is not the attorney representing the estate on appeal.

**3.** Section 474.120, RSMo 1978, states:

Inheritance and statutory rights deemed waived, when.—The rights of inheritance or any other statutory rights of a surviving spouse of a decedent who dies intestate shall be deemed to have been waived if prior to, or after, the marriage such intended spouse or spouse by a written contract did agree to waive such rights, after full disclosure of the nature and extent thereof, including the nature and extent of all property interests of the parties, and if the thing or promise given to the waiving party is a fair consideration under all the circumstances.

the knowledge or disclosure required to establish the validity of the antenuptial agreement. Therefore, our determination is to decide if the estate made a prima facie showing on these requirements. Compare *Green v. Stanfill*, 612 S.W.2d 435, 436 (Mo.App.1981).

In *Estate of Murphy*, 661 S.W.2d 657 (Mo.App.1983), this district held a postnuptial agreement invalid because there was no evidence that the widow "knew or was advised of her rights of election." 661 S.W.2d at 661. In *Murphy*, there were no recitals in the agreement relating to her disclosure or knowledge of the legal right of an election to take against the will.

In *Estate of Thrasher*, 651 S.W.2d 562, 563 (Mo.App.1983), a widow argued that the burden was on the estate to prove that before the antenuptial agreement she had been given a full disclosure of the nature and extent of the assets of the decedent. The agreement generally recited disclosure of the parties' assets and the court found that this constituted "prima facie" evidence that the disclosure had occurred.

*Murphy* dealt with knowledge or advice of the rights of an election and *Thrasher* with disclosure of assets. *Murphy* distinguished *Thrasher* because there was no recital in *Murphy* of disclosure as was present in *Thrasher*. In *Thrasher*, the only question of disclosure was of property and recitals made a prima facie showing of that.

Here, the agreement recites that "both parties are possessed of considerable property, real, personal and mixed, and both parties have been advised as to their respective rights therein in the event of their marriage to each other and in the absence of any agreement between them". Thus, the agreement recites that both parties have been advised as to their rights in the other's property, but it does not recite that they know or have been advised of each other's property.

Following the reasoning in *Thrasher*, we believe that the recitals in the agreement before us prima facie established that the widow was advised as to the usual legal rights of a surviving spouse, which would include the rights she now seeks to exercise. We are left with the question of whether she received adequate information or was charged with sufficient knowledge of his assets.

*Estate of Tegeler*, 688 S.W.2d 794, 799 (Mo.App.1985), accurately states that § 474.220 expressly requires "full disclosure of the nature and extent of the right" of election, but it does not expressly require full disclosure of the nature and extent of the property of the spouse. Cases have stated that in order to make an informed and intelligent decision, the spouse would have to be substantially advised of the other spouse's property, or have knowledge of those facts. Id. at 799; see also *Youngblood*, 457 S.W.2d at 756; *Murphy*, 661 S.W.2d at 660.

The purpose of § 474.220 is to insure that the spouse "is able to make an informed and intelligent election and thus prevent fraud and overreaching." *Tegeler*, supra, 688 S.W.2d at 799. "No satisfactory rule as to the sufficiency of disclosure or equivalent knowledge can be formulated in concrete terms for this is ordinarily dependent upon the circumstances of the case." Id. at 797.

Both parties had children by a previous marriage. At the time the agreement was entered into, apparently Mrs. White had more assets than the decedent. The antenuptial agreement was "her idea". She wanted to assure that her property went to her children. There was testimony that in the four years that she and the decedent dated they had discussed their financial affairs "in a general way and in particular in some instances." Mrs. White was not a novice in financial matters. There was evidence that she had assisted her previous husband when he was starting his business, and upon the dissolution of that marriage she received considerable assets.

The evidence here may reflect a disclosure well short of that which other cases indicate is required, and based on those decisions it is certainly understandable how

the trial judge thought it was insufficient. However, in keeping with the purpose of the disclosure and the practical application of it as discussed in *Tegeler*, we conclude that the estate made a prima facie showing that there was a sufficient disclosure or knowledge of the decedent's assets and of the right of election and other statutory rights of a surviving spouse. There was evidence that the widow was the moving party behind the execution of the agreement and had good reason to want it, and we determine that there was sufficient evidence from which the trial court could have found that she was sufficiently advised and had sufficient knowledge to have made an intelligent, meaningful choice whether to sign the agreement.

The judgment is reversed and the cause remanded for a new trial.

HOGAN, FLANIGAN and MAUS, JJ., concur.