**J. William HOLLIDAY, Personal Representative of the Estate of Owen Hawkins, deceased Respondent,**

v.

**Violet HAWKINS, Appellant,**

and

**Connie Kirchner, Respondent.**

**No. 55781.**

Missouri Court of Appeals, Eastern District, Division One.

Aug. 29, 1989.

J. Patrick Wheeler, Canton, for appellant.

James William Holliday, Kahoka, James Daniel Terrell, Wasinger, Parham & Morthland, Hannibal, for respondent.

**PER CURIAM.**

Violet Hawkins, the surviving spouse of Owen Hawkins, appeals from the judgment of the trial court which denied her election to take against the will of Owen Hawkins and her claim for exempt property, family allowance, homestead allowance, and rental property proceeds. We affirm.

Violet and Owen were married on January 29, 1976. No children were born of the marriage, however, both had children by previous marriages. On December 18, 1984, each executed a separate will leaving all property to their respective lineal descendants. Neither will was ever revoked. Owen died testate on July 8, 1987, and on September 21, 1987, Violet filed an election to take against decedent's will. *See* Section 474.160, RSMo (1986).

Violet first contends that the trial court erroneously found that she waived her right to elect to take against the will because of a provision in her will which stated that she would not make any claims against her husband's estate.

Section 474.220, RSMo 1986, sets forth the requirements for waiving the right to elect against a will. There must be a contract, agreement or waiver; the contract, agreement or waiver must be in writing; it must be signed by the party waiving the right; and the waiver must be based on fair consideration. Additionally, there must be full disclosure of the property interests of the spouse in whose favor the waiver is granted. *Estate of Tegeler,* 688 S.W.2d 794, 797 (Mo.App.1985). Disclosure is unnecessary, however, when the spouse relinquishing the right has actual or constructive knowledge of the property interests involved. *Id.* "The ultimate inquiry is whether the surviving spouse against whom enforcement of the agreement is sought has been defrauded or overreached." *Id.*

The present litigation arose in the form of a petition for declaratory judgment in which the personal representative sought, among other things, "a finding as to whether or not ... Violet ... is barred from claiming against the estate of ... Owen...." The trial court found a valid waiver. This finding was based on Article III of Violet's will and Violet's testimony relating to her knowledge of her late husband's assets.

Violet had three living children from her previous marriage; Owen had one. Violet was employed as a registered nurse until her retirement in 1986. Owen was a farmer. Both earned roughly equivalent incomes. At the time of their marriage, both had substantial separate assets. After the marriage, Violet's name was added to the deed on a 156 acre farm owned by Owen. However, Violet continued to own her home separately; although it was the home in which the parties resided. Much of their other separate property was converted to joint property.

The wills of Owen and Violet were drafted at the same time by the same lawyer. Violet testified she was not ready to execute a will, "[b]ut Owen wanted to get [his daughter] taken care of ... [s]o I said,

'Fine, we'll do it.'" The wills were executed the same day. Violet's will provided in part,

ARTICLE II. I hereby devise a life estate in the personal residence and surrounding ground that I am occupying as of ... my death to my beloved husband, Owen Hawkins, if he survives me, but if he does not survive me, then I hereby give, devise and bequeath such real estate, and all of my other property, whether real, personal or mixed, of whatsoever nature and wheresoever located, to my descendants, in equal shares.

ARTICLE III. I hereby make no other bequest to my beloved husband, Owen Hawkins, as he has ample provisions for his own support, and has of this date made a Will leaving his separate property to his descendants, and in consideration of his agreement to make no claims against my estate, I have agreed to make no claims against the estate of the said Owen Hawkins. I hereby acknowledge that we do have some jointly held property, which is to go to the survivor as provided by Missouri law.

Owen's will had similar provisions:

ARTICLE III. I hereby leave nothing to my beloved spouse by this Will, as we have agreed that I will execute this Will leaving my property to my descendants, and that she shall as of this same date execute a Will leaving her property to her lineal descendants. I have agreed to make no claim against the estate of my wife other than provisions she makes for me in such Will, and in consideration of her agreeing to make no claims against my estate.

Violet testified that she did, in fact, agree not to make any claims against Owen's estate. She further testified she saw no need to prepare a list of assets when the wills were drafted. She stated she was aware of Owen's assets, nothing had been hidden from her and she knew that Owen wanted to make provisions through his will for his daughter.

■ There was substantial evidence from which the trier of fact could reasonably conclude that the requirements of Sec-

tion 474.220 have been satisfied. The agreement wherein the right to elect is waived is embodied in identical provisions of the wills of Owen and Violet. The terms "agreement" and "agree" are used explicitly. The agreement is in writing and is signed by both parties. The mutual provisions constitute fair consideration. Finally, Violet's testimony more than supports the conclusion that she had knowledge of her late husband's assets and that no fraud or overreaching was involved in the execution of the waiver.

A will may contain separate provisions, some of which are testamentary and some of which are contractual. *Owens v. Savage,* 518 S.W.2d 192, 200 (Mo.App.1974); 97 C.J.S. Wills, Section 1367(c) (1957). The provisions must be considered independently to determine their effect. *Id.* While testamentary provisions are no doubt by their nature revocable, this revocability does not impair the binding nature of those provisions of a will which are contractual. *Arrington v. Westport Bank,* 577 S.W.2d 166, 171 (Mo.App.1979); *Owens, supra,* 518 S.W.2d at 200. In this case, while the wills of Owen or Violet could be revoked until their death, such a revocation would not affect their mutual agreements not to make claims against the other's estate.

The intention of Owen and Violet relating to the disposition of their property is clear. The mutual waivers executed by them are the logical means to effectuate that intention. Violet's waiver satisfies the requirements of Section 474.220. Point one is denied.

Violet's second claim of error concerns a tract of land in which the deceased held a life estate. The remainder was to go to Connie Kirchner, Owen's only living child. On March 18, 1986, the deceased entered into a lease agreement for the real estate with a Mr. Boudreau for a term commencing March 15, 1986, and terminating March 14, 1987. The lease provided that Mr. Boudreau would pay the deceased $7,000 by November 1, 1986, and that the rent was assigned to Violet Hawkins "if Owen Hawkins dies prior to the date that the rent is paid under [the] lease, or any renewal

thereof ..." Mr. Boudreau paid the 1986 rent, and that lease expired March 14, 1987. Violet contends that the 1986 lease was orally renewed for another year with the only variation being that the rental price changed from $7,000 to $6,500. Mr. Boudreau paid $6,500 to the deceased's estate on November 25, 1987.

Violet asserts that the trial court erred in denying her the $6,500 cash rent paid to the personal representative of deceased's estate. She claims an entitlement to the funds because she was assigned the rent under the terms of the 1986 lease.

■ The trial court did not reach the issue of whether Owen could effect an assignment of rent after his death when he only possessed a life estate in the property. Instead, the trial court found that Violet failed to carry her burden of proving a renewal of the 1986 lease. The only evidence in support of Violet's position was her assertion that the 1986 lease was orally renewed in 1987. The trial court, as trier of fact, was entitled to reject that evidence. *See Osborne v. Boatmen's Nat. Bank,* 732 S.W.2d 242, 245 (Mo.App.1987). Point two is denied.

The judgment of the trial court is affirmed.