**In re the MARRIAGE OF Elizabeth Crancer HALL and Emmett Russell Hall.**

**Elizabeth Crancer Hall, Petitioner–Appellant,**

and

**Emmett Russell Hall, Respondent–Respondent.**

No. 16900.

Missouri Court of Appeals, Southern District, Division One.

Dec. 6, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1990.

Application to Transfer Denied Feb. 7, 1991.

David Crader, Crader, Crader, Dolan & Dolan, Sikeston, for petitioner-appellant.

Michael B. Hazel, Caruthersville, William M. Barvick, Jefferson City, for respondent-respondent.

PREWITT, Judge.

A decree of dissolution of the parties' marriage was entered on February 16, 1990. Petitioner–Appellant has one point, contending that the trial court abused its discretion in only awarding her maintenance of $300 per month, providing that it terminate in one year, and making it non-modifiable.

Review is under Rule 73.01. It is interpreted to require that the trial court's decision be sustained, unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990). As no findings of fact were requested or made, all fact issues shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(2). In this nonjury case due regard is given to the opportunity of the trial judge to determine the credibility of witnesses. Rule 73.01(c)(2); *Lafferty*, 788 S.W.2d at 361.

Section 452.335.2, RSMo Supp.1989 sets out certain factors to be included in determining maintenance. It states:

2. The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

In discussing the statute, courts have held that a spouse is not "automatically" entitled to an amount that would "equal the standard of living established during the marriage." *Fiorani v. Fiorani*, 720 S.W.2d 438, 443 (Mo.App.1986). It is not always an abuse of discretion that a maintenance award falls short of the spouse's monthly expenses. *Id.* A divorcing spouse has an affirmative duty after the dissolution to seek full-time employment. *Newman v. Newman*, 717 S.W.2d 568, 569 (Mo. App.1986).

Although the trial court can take into account possible future prospects in determining the spouse's ability to support oneself, the evidence must justify the belief the spouse will realize these expectations. *In re Marriage of Runez*, 666 S.W.2d 430, 433 (Mo.App.1983). Maintenance should not be conditioned upon happenings in the future unless such evidence shows the cir-

cumstances of the parties would likely change in the future. *Id.*[1]

The parties were married on February 15, 1955. They have three children, all of which are emancipated and living in other states. At the time of trial petitioner was 58 and respondent 65. He is a medical physician practicing in Pemiscot County. The only conduct of respondent during the marriage which petitioner complained of was a purported affair with his twenty-one-year-old female employee. Respondent denied any improprieties with her. Respondent testified that petitioner had an alcohol problem. Petitioner denied it.

Petitioner is employed at a florist shop in Caruthersville. She was trained as a registered nurse anesthetist, but has not worked at that profession since 1956, when she became pregnant with the parties' first child. Appellant apparently is healthy. Respondent testified he believed she could become recertified as a nurse. No other testimony regarding her recertification was offered and no evidence was presented as to the income she might earn as a registered nurse.

Petitioner has "take-home pay" from the florist shop where she works of "about $129." Respondent's net income from his medical practice in 1988 was $98,732.38. For the first ten months of 1989 his net income was $92,973.21. A "Balance Sheet" offered by respondent and admitted in evidence showed that the parties had assets of $208,817 and liabilities of $299,379.54. Apparently most, if not all, these assets were marital, held jointly and there was joint liability for most of the debts. Respondent was ordered to pay a majority of the debts.

Respondent had his income tax preparer prepare a "Emmett R. and Elizabeth C. Hall, Jr. [sic] Cash Flow For The Period Jan. 1 thru Oct. 31, 1989". It was admitted without objection. It showed that expenditures exceeded receipts by $5,782.09. It included "Animal Expense" of $3,201.80, apparently for training and care of a bird dog or dogs; "Cash: Elizabeth C. Hall" $5,350; "Cash: Clay Hall" $700 and "Cash: Emmett R. Hall Jr." $9,550. Some of the expenditures will be reduced from respondent's expenses as it included expenses of petitioner. Also, there could be less taxes paid by respondent because of maintenance paid.

Besides the reductions just noted, $3,201.80 for dog expense and $700 for the parties' son Clay can be eliminated. Deducting these amounts and the cash allocated to the parties results in a figure of $18,801.80. Deducting the deficit of $5,782.09 (although as earlier mentioned, this may no longer be the true deficit) leaves a balance of cash available for the parties of $13,019.71.

■ From the evidence presented it appears the respondent could pay more maintenance. This is especially true when we consider that at the present time the appellant is unable to support herself without further education and her ability to do so is speculative without any evidence to support it other than a belief by the husband that she could find employment again. Although requiring respondent to pay more maintenance for an unlimited time imposes a financial burden on an already debt burdened spouse, it has been aptly stated, "marriage dissolutions normally cause many more financial problems for the parties than are solved." J. Cochran, 21 Missouri Practice, Family Law § 11.7 at 302 (1990).

By staying home and out of the job market for 34 years to be a homemaker, the appellant has foregone many of the employment opportunities open to a woman of her training. Such foregoing of opportunities is a factor to be considered when awarding maintenance. *Weiss v. Weiss*, 702 S.W.2d 948, 956 (Mo.App.1986). Now at 58, she will compete in a market against much younger nurses and, though nurses appear to be in demand, the limited years left in her working career makes it unlikely she will acquire any income producing assets or earn an income which could support

1. Section 452.335.3, RSMo Supp.1989, provides that the "court may order maintenance which includes a termination date." However, that does not dispense with the requirement that to terminate maintenance there be evidence of change in the future.

her anywhere near the standard she is used to. It is evident the maintenance awarded to the appellant was not sufficient.

█ If an appellate court believes the trial court has abused its discretion, it is obligated to enter the judgment the trial court should have entered, effective at the time of the decree. *Runez*, 666 S.W.2d at 433–434. Rule 84.14.

The award of maintenance is reversed together with the portion of the judgment terminating it in one year and making it non-modifiable. The judgment is modified to increase the maintenance award to $400 per month to be modifiable by court order upon proper motion and evidence and otherwise with no fixed termination date. In all other respects the judgment is affirmed. The cause is remanded to the trial court to so modify the judgment.

MAUS, P.J., and CROW, J., concur.