In re the MARRIAGE OF Betty Ann LEWIS and Noel Rex Lewis.

Betty Ann Lewis,
Petitioner–Respondent–Appellant,

and

Noel Rex Lewis, Respondent–Appellant.

Nos. 16579, 16602.

Missouri Court of Appeals,
Southern District,
Division Two.

April 2, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 23, 1991.

Application to Transfer Denied
June 11, 1991.

Loren R. Honecker, Devon F. Sherwood, Sherwood, Honecker & Bender, Springfield, for petitioner-respondent-appellant.

Jerry L. Redfern, Richard L. Schnake, Neale, Newman, Bradshaw & Freeman, Springfield, for respondent-appellant.

PREWITT, Judge.

Both parties appeal from an amended decree of dissolution of their marriage en-

tered August 22, 1989. The appeals have been consolidated.

## I. FACTS

Betty Ann Lewis (wife) and Noel Rex Lewis (husband) were married on December 29, 1969. It was the second marriage for both. They each had children by their previous marriage. No children were born of this marriage. Five days before their marriage the parties signed an antenuptial agreement. Wife testified that she was not informed of husband's assets and did not know what they were. Husband said she was aware because of their relationship in the months before their marriage.

Husband is a medical physician specializing in pathology. He and another medical physician each own 50% of the corporate stock of Regional Pathology Services, Inc. The corporation supervises and apparently operates Springfield Medical Laboratory and receives all of its net income. The most recent income of husband in evidence from this source is from 1981 through 1985. Annual income varied from a high of $147,575 to a low of $117,000.

At the time of their marriage, wife was the chief medical technologist at Cox Medical Center, a Springfield hospital. Her employment at Cox Medical Center terminated a few days before their marriage. Previously she reported to pathologists in the Pathology Department of the hospital, "particularly to Dr. Lewis." After her employment ceased, she became a "full-time housewife." For approximately seven or eight years she worked only as a housewife and for the last ten years previous to trial worked on a part-time basis. At the time of trial she worked for four entities on "a part-time, fill-in basis." Her net monthly income was $844.35.

The trial court found that wife did not engage in misconduct during the marriage, but the husband did, which not only led to the breakup of the marriage, but affected the parties economically. There was evidence he bought an unrelated female expensive gifts and took her to the Virgin Islands and Hawaii. The trial court also found that husband was physically abusive to wife. Other facts are mentioned in discussing the points on appeal.

## II. THE DECREE

The trial judge awarded marital property to wife valued at approximately $522,000. She also received nonmarital property valued at $26,985. Husband received marital property valued at $1,153,313.18.[1] He was awarded nonmarital property valued at $160,836.26 plus many unvalued assets. Husband was also required to pay the wife, as a part of the property distribution, $252,200, and $23,270.20 to wife's attorneys as attorneys fees. Wife was to pay the amount of an encumbrance on real estate granted her of approximately $7,000. Husband was ordered to pay known debts of $168,346 and all state and federal income taxes and real property taxes for 1988 and prior years. No maintenance was awarded.

## III. PARTIES' CONTENTIONS ON APPEAL

Husband has four points, the latter three "[a]lternatively to Point I". By his first point husband contends the trial court erred in refusing to enforce the parties' antenuptial agreement, because the finding is not supported by the evidence, is against the weight of the evidence, and erroneously declares and applies the law, "in that the evidence demonstrates that Betty was fully informed about the nature and extent of Rex's property at the time the agreement was executed and that the agreement is not unconscionable".

Husband's remaining points state the trial court erred (2) in determining the annuity was marital property, or "alternatively, any increase in the 'value' of the annuity policy is an increase in the value of property that Rex acquired prior to the parties' marriage" because a portion of the annuity "represents a rollover of separate property owned by Rex prior to the marriage"; (3)

1. This figure includes a change in the court's valuation of annuities from $200,000 in the initial decree to "$310,000.00 plus" reflected in a letter to counsel but not in the amended decree.

"in classifying Rex's interest in Springfield Medical Laboratory as marital property, because such a classification is unsupported by the evidence and is against the weight of the evidence, in that Rex acquired that interest in exchange for property that he acquired prior to the marriage"; and (4) "in refusing to take into account the income tax consequences of its property division, because its order that Rex pay Betty and her attorneys cash totaling $275,470.20 will cause Rex to incur an insupportable income tax liability, in that he will be required to liquidate his tax deferred retirement annuities in order to satisfy that judgment."

Wife contends the trial court erred in (1) denying her maintenance because there was substantial evidence in support of her claim and the denial was against the weight of the evidence "in that both petitioner's need for maintenance and respondent's ability to pay same were clearly established"; and (2) "in valuing respondent's [husband's] interests in Springfield Medical Laboratory and Regional Pathology Services, Inc. at $145,600 because such valuation is not supported by substantial evidence and is against the weight of the evidence".[2]

## IV. GENERAL REVIEW STANDARDS

■ Review is under Rule 73.01(c). As that rule is interpreted, this court is to affirm the judgment, unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990). A judgment is to be set aside because it is against the weight of the evidence only with caution and with a firm belief that the decree or judgment is wrong. *Plunkett v. Parkin*, 788 S.W.2d 356, 357 (Mo.App.1990).

"Weight of the evidence" means its weight in probative value, not its quantity. *Looney v. Estate of Eshleman*, 783 S.W.2d

164, 165 (Mo.App.1990). "The weight of evidence is not determined by mathematics, but on its effect in inducing belief." *Id.*

■ Due regard is given to the trial court's determination on the credibility of witnesses. Rule 73.01(c)(2); *Looney*, 783 S.W.2d at 165. The trial judge is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record. *In re Marriage of Chilton*, 576 S.W.2d 584, 585 (Mo.App.1979). The trial judge, as the trier of fact, can disbelieve testimony even when uncontradicted. *Robinson v. Estate of Robinson*, 768 S.W.2d 676, 677 (Mo.App. 1989).

## V. HUSBAND'S APPEAL

### A. PRENUPTIAL AGREEMENT

■ Husband's first point, as earlier stated, is that the trial court erred in not enforcing the parties' antenuptial agreement. The trial court determined it was nonenforceable because there "was no meaningful disclosure of Respondent's [husband's] assets to Petitioner [wife]" and "was so one-sided that it is unconscionable." Husband argues these findings are not supported by the evidence and against the weight of the evidence. In *Ferry v. Ferry*, 586 S.W.2d 782 (Mo.App.1979), the Western District of this court determined antenuptial agreements contemplating dissolution of the parties' marriage are not against public policy and can be valid. The case determined they are invalid if "unconscionable" under § 452.325.2, RSMo 1986.[3]

*Ferry* also said, based on cases considering the validity of agreements restricting or eliminating a spouse's property rights upon death, antenuptial agreements are invalid in a dissolution matter "unless entered into freely, fairly, knowingly, understandingly, and in good faith with full disclosure." 586 S.W.2d at 786. See also

2. The trial court actually set the values at a total of $145,611.

3. But cf. *In re Marriage of Bequette*, 563 S.W.2d 528, 530–531 (Mo.App.1978), holding the agree-

ment contemplated by § 452.325 is "attendant", that is, "accompanying, connected with, or immediately following" separation or dissolution.

*Nedblake v. Nedblake*, 682 S.W.2d 852, 854 (Mo.App.1984); *Whitenton v. Whitenton*, 659 S.W.2d 542, 547 (Mo.App.1983); *Williams v. Williams*, 166 Ariz. 260, 801 P.2d 495, 498 (App.1990) (majority of jurisdictions find antenuptial agreements regarding maintenance valid if fair and with full disclosure).

As both parties cite and discuss, but neither challenges *Ferry*, review will be based upon it. It is not necessary to discuss unconscionability, as the evidence was sufficient for the trial court to find no meaningful disclosure of husband's assets.

■ The "full disclosure" required includes both the spouse's legal rights and the nature and extent of the property of the other spouse in order to make meaningful the decision to waive all or a part of those rights. See *In re Estate of White*, 718 S.W.2d 185, 186–187 (Mo.App.1986). In order to make an informed decision, a spouse should be substantially advised of the other spouse's property or have knowledge of those facts. *Id.* at 186. "No satisfactory rule as to the sufficiency of disclosure or equivalent knowledge can be formulated in concrete terms for this is ordinarily dependent upon the circumstances of the case." *Estate of Tegeler*, 688 S.W.2d 794, 797 (Mo.App.1985).

The agreement was entered into on December 24, 1969, five days before the parties' marriage. The wife testified she was not informed of husband's assets before signing the agreement. Husband contends the evidence showed wife was aware of all his assets.

Even if it is conceded wife knew husband owned certain types of property, including real estate, there is no indication she knew the extent of such holdings, whether the real estate was encumbered, and if so, the equity in it, or other specific information regarding it. The evidence was sufficient for the trial court to find there was not meaningful disclosure to wife. Point I is denied.

## B. ANNUITY AND SPRINGFIELD MEDICAL LABORATORY

■ Husband's second point states the court erred in determining an annuity was marital property because it was a "rollover" of previous annuities. His third point says the trial court erred in treating his interest in Springfield Medical Laboratory as marital property because it was acquired in exchange for property he had before the marriage. As these points are disposed of on the same basis, they are considered together.

■ There was evidence strongly suggesting that at least part of husband's interest in the annuity and Springfield Medical Laboratory were acquired after the marriage and not in exchange for or as a rollover of other assets. However, it is not necessary to determine if any or part of those assets are separate property. An erroneous declaration in designating separate property as marital property does not call for a reversal where the decree is nevertheless fair. *Degerinis v. Degerinis*, 724 S.W.2d 717, 721 (Mo.App.1987); *In re Marriage of Garrett*, 654 S.W.2d 313, 316 (Mo.App.1983). In *Degerinis*, no prejudicial error was found where a spouse claiming the separate property was awarded it and had by far the greater earning potential.

The trial court is to "divide the marital property in such proportions as the court deems just after considering all relevant factors including" certain specified ones. See § 452.330, RSMo Supp.1989. Among those is the conduct of the parties during marriage. § 452.330.1(4), RSMo Supp. 1989.

■ A just division of marital property does not have to be equal, particularly where one party has engaged in misconduct. *In re Marriage of Lindenfelser*, 596 S.W.2d 71, 72 (Mo.App.1980). Division of property is a matter within the sound discretion of the trial court and its decision should not be disturbed unless abused. *Lafferty*, 788 S.W.2d at 361.

As earlier mentioned, the trial court found the wife did not engage in misconduct during the marriage, but the husband did, which not only led to the breakup of the marriage, but affected the parties eco-

nomically. There was evidence he bought expensive gifts for another woman and took her to the Virgin Islands and Hawaii. The trial court also found husband was physically abusive to wife.

Regarding the annuity the trial court stated in a letter explaining amendments to the judgment:

I make no changes based on the fact that the Transamerica annuities were rollovers. I find that most of the contributions to those annuities were made during the marriage and I have assigned those annuities to Dr. Lewis. I have assigned a dollar value to be transferred to Mrs. Lewis but that is not affected by the character of the annuities.

Whether the annuity or husband's interest in Springfield Medical Laboratory are considered as marital property or separate property, in whole or in part, under the evidence the division of property was just. Husband's Points II and III are denied.

## C. INCOME TAX CONSIDERATIONS

■ Husband's remaining point states the trial court refused to take into account the income tax consequences of its property division because having to pay his wife and her attorneys a total of $275,470.20 will cause him to have to liquidate his tax deferred retirement annuities.

■ As husband says, the tax consequences of a dissolution should be taken into consideration in ordering a division of marital property. *In re Marriage of Harrison*, 657 S.W.2d 366, 371 (Mo.App.1983).

The trial court expressly considered the income tax consequences of husband's cashing in annuities. In a letter explaining the final ruling, preceding the judgment, the trial judge stated:

4. Section 452.335.1, RSMo Supp.1989, states:
**Maintenance order, findings required for—termination date, may be modified, when.**—1. In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

Though I had given the indication that I might take into consideration the fact that Dr. Lewis will have to cash in some annuities and suffer some tax consequences, I find that the value of the annuities is so much higher than what I had originally perceived (I had valued them at about $200,000.00 when in fact they are $310,000.00 plus), I give no additional consideration for that fact.

Obviously, tax consequences cannot be the only concern, the primary concern remains a just division. Tax consequences should not prevent a spouse from receiving a fair portion of the assets. There may well be other ways, such as borrowing or the sale of other assets the husband could use rather than liquidating the annuities. The trial court considered the tax consequences and we find no abuse of discretion in the result reached.

## VI. WIFE'S APPEAL

### A. DENIAL OF MAINTENANCE

■ Wife contends the court's denial of maintenance was against the weight of the evidence because she showed a need for it and husband had the ability to pay maintenance. The determination made by the trial court on the allowance of maintenance is discretionary, and appellate review is only to determine if that discretion was abused. *Pederson v. Pederson*, 599 S.W.2d 51, 53 (Mo.App.1980).

■ Section 452.335.1, RSMo Supp. 1989, sets out certain factors to be considered in determining if maintenance is granted. It is set out below.[4] A divorcing spouse has an affirmative duty after the dissolution to seek full-time employment. *Newman v. Newman*, 717 S.W.2d 568, 569

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(Mo.App.1986). The trial court found that wife was able to work and secure employment. She received substantial marital assets.

This court ordered additional maintenance in *In re Marriage of Hall,* 801 S.W.2d 471 (Mo.App.1990), but there the complaining spouse received little in assets, and there was no evidence that she could be employed at a sufficient salary to support herself.

Here, wife had the ability to work and support herself, and also received substantial assets in the decree. We find no abuse of discretion in denying maintenance. Wife's Point I is denied.

## B. EVALUATION OF LABORATORY AND REGIONAL PATHOLOGY SERVICES

■ Wife's remaining point states the trial court erred in evaluating husband's interest in Springfield Medical Laboratory and Regional Pathology Services, Inc., at $145,600. She contends this figure was not supported by substantial evidence and was against the weight of the evidence. As earlier noted, the value placed by the trial court was $145,611. This was slightly more than the value testified to by husband.

■ When the amount determined is within the range of evidence, an appellate court generally will not find the determination erroneous or weigh the evidence. See *Ikonomou v. Ikonomou,* 776 S.W.2d 868, 869–870 (Mo.App.1989); *Robinson v. Estate of Robinson,* 768 S.W.2d 676, 677 (Mo. App.1989); *Arkansas–Missouri Power Co. v. Haines,* 592 S.W.2d 883, 885–886 (Mo. App.1980). Cf. *In re Marriage of Sumner,* 777 S.W.2d 267, 273–274 (Mo.App.1989). Although wife's evidence indicated a much higher value, the trial court's finding was within the range of the evidence. It was for the trial judge to determine the credibility of the witnesses. This point is denied.

## VII. CONCLUSION

The trial court followed the law and its decision appears to be a practical disposition of a case with many complicated issues. The judgment is affirmed.

PARRISH, P.J., and FLANIGAN, J., concur.