**Robert F. ROBERTS, Appellant,**

v.

**ESTATE OF Ada Dorothy ROBERTS, Deceased, Respondent.**

**No. WD35157.**

Missouri Court of Appeals,
Western District.

Jan. 24, 1984.

Robert J. Dierkes, Bear, Hines & Thomas, Columbia, for appellant.

Rex V. Gump, Hulen, Hulen, Tatlow & Gump, Moberly, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

PER CURIAM:

Robert F. Roberts, surviving spouse of Ada Dorothy Roberts, appeals a judgment of the Probate Division of the Circuit Court of Randolph County in favor of the defendant, the estate of Ada Roberts, which denied Appellant's election against the will and his claim for exempt property, family allowance and homestead from the estate.

The Probate Division found that an antenuptial agreement between Appellant and the deceased barred his claims. We affirm the judgment.

Robert F. Roberts and Ada Dorothy (Fleming) Roberts were married July 17, 1972, in Columbia, Missouri. Both had been previously married. Mr. Roberts was 53 years old and Mrs. Roberts was 57 years old when they were married. Each had three children by a previous marriage.

Prior to their marriage, Robert and Ada had signed an "antenuptial agreement" on June 14, 1972. For purposes of clarity, it is set forth here in full:

This indenture made and entered into this 14th day of June, 1972, by and between Robert Franklin Roberts, proposed bridegroom, party of the first part, whose permanent address is 309 East McKenzie, Moberly, Missouri, and Ada Dorothy Fleming, proposed bride, party of the second part, whose address is 403 South 5th, Moberly, Missouri.

WHEREAS, a marriage is intended to be solemnized between said parties, and in view of the fact that after their marriage, in the absence of any agreement to the contrary, their legal relations and poser (sic) as regards to property may change after their marriage,;

WHEREAS, by reason of some change in their domicil, or otherwise, they may not maintain their present domicil, or have any other reason which may apply to their relations, powers and capacities,;

Now this indenture witnesseth, that each of them the said Robert Franklin Roberts and Ada Dorothy Fleming, for and in consideration of said marriage, and affection which they hold for one another, they and each of them, shall be and continue to be completely independent (sic) of the other only as regards to the enjoyment, possession and disposal of the following tracts of real estate to-wit:

[Here follows the legal description to four tracts of real estate all located in Moberly, Missouri.]

*Now therefore, each of them hereby agree with the other in consideration of said proposed marriage, that so far as is legally possible by their private act and agreement, all property belonging to either of them at the commencement of the marriage, or coming to each of them during the marriage, shall be enjoyed by him or her, and be subject to his or her disposition as his or her separate property in the same manner as if the said proposed marriage had never been celebrated. This agreement applies specifically to the property mentioned above.*

This agreement is further material in that both parties feel a strong moral obligation to their children. *It is understood that both may make deeds or wills related particularly to the above described property disposing of same to their children.*

It is further stipulated and agreed that either party, or both parties, herein may by will or contract provide the other with a limited use and enjoyment of either of the above described properties, as may be useful and expedient, should they be predeceased by their children or circumstances change so that either or both of them may need the use and enjoyment of the above properties for a limited time, but nothing shall change their right, as provided herein, to dispose of these properties separately and without the consent of the other.

It is further agreed that this agreement shall in no-wise apply to any other rights one may have with or against the other, and shall not apply to current income which each of them fully intends to share.

It is further agreed that neither will bring any claim against the other relative to the disposition of acquired property, and particularly the above specifically mentioned property, and that each shall be free of any apparent right of dower that the other may have at law, which this agreement specifically refutes. [emphasis supplied]

Robert and Ada were continuously married until Ada's death on May 7, 1983.

Following Ada's death, letters testamentary were issued, on May 11, 1983, to her daughter, Jo Ann Jacobs, as personal representative according to the will. Mrs. Roberts' will disposed of all of her probate property to her three children. The will specifically recites that the will was made "without consideration of my present husband and that I am doing so because of a pre-nuptial agreement entered into between me and my second husband whereby I have the specific provision of disposing of my personal property." Mr. Roberts filed his claims for a year's support, § 474.260, RSMo Supp.1982, for a homestead allowance, § 474.270, RSMo Supp.1982, for exempt property, § 474.250 RSMo Supp.1982, and his election to take against the will, § 474.160, RSMo Supp.1982. The personal representative, through her attorney, opposed these claims of Mr. Roberts asserting that the antenuptial agreement was a waiver of all such claims. § 474.220, RSMo 1978. A hearing was held in the Probate Division of the Circuit Court of Randolph County on July 7, 1983. After presentation of evidence, the matter was taken under advisement, and on August 11, 1983, the Probate Division issued its judgment in favor of the personal representative and denying all of Mr. Roberts' claims. The Court concluded that the antenuptial agreement barred Mr. Roberts' attempt to elect against the will and his claims for the various statutory allowances.

In his appeal, Mr. Roberts contends that the trial court erroneously found the antenuptial agreement to bar his election against the will and his claims against the estate. He makes three arguments. First, he urges that there was insufficient "disclosure of the nature and extent of the property owned by each party" at the time the agreement was executed. Next, he suggests that there was inadequate consideration to support the agreement. Finally, he argues that the agreement is ambiguous and "must be construed against the party who drafted it," that is against the decedent and her estate. We deny these arguments and shall address them one at a time.

I

Antenuptial agreements, as they relate to testate estates, are governed by § 474.220, RSMo 1978:

The right of election of a surviving spouse hereinbefore given may be waived before or after marriage by a written contract, agreement or waiver signed by the party waiving the right of election, after full disclosure of the nature and extent of the right, if the thing or the promise given to the waiving party is a fair consideration under all the circumstances.

This section has been construed to govern not only waiver of the right of election contained in § 474.160, RSMo Supp.1982 ("Election by surviving spouse to take against will") but also waiver of other rights of a surviving spouse such as claims for exempt property, § 474.250, RSMo Supp.1982; claims for family allowance ("year's support"), § 474.260, RSMo Supp. 1982; and claims for a homestead allowance, § 474.290, RSMo Supp.1982. *Estate of Youngblood v. Youngblood,* 457 S.W.2d 750, 754 (Mo.1970).

We first examine the record on appeal to determine whether there was "full disclosure of the nature and extent of the right[s]" being waived in the antenuptial agreement in this case. This language in the statute has been held to require disclosure of the property interests of the prospective spouses as well as disclosure of the legal rights of a surviving spouse which the agreement will be cancelling. *Youngblood,* 457 S.W.2d at 754; *Murphy v. Estate of Murphy,* 661 S.W.2d 657, 660 (Mo.App.1983).

While it may well be preferable to recite in the agreement all property owned by both parties prior to the marriage, failure to do so is not fatal to an agreement. *Hosmer v. Hosmer,* 611 S.W.2d 32, 35 (Mo. App.1980). When an agreement fails to completely itemize the property of the prospective spouses, evidence may be received to demonstrate that the parties in fact had knowledge of each other's property. *Youngblood,* 457 S.W.2d at 754, 757. In this

case, Appellant testified that, at the time he signed the antenuptial agreement, he knew that his prospective bride owned the four pieces of real estate mentioned in the agreement; he knew she owned a 1970 Buick; and he knew she owned certain household furnishings in the house where she lived. Appellant, himself, owned a home in Moberly before the marriage and, presumably, some personal property. All of this was known to Appellant by his own admission. However, at trial and in his brief, Appellant speculates that Mrs. Roberts may have had substantial undisclosed assets at the time of their marriage. Such speculation is dispelled by comparison of the estate inventory with what Mr. Roberts admits his wife owned at the time of their marriage. The estate inventory lists: (a) three pieces of real estate with a total value of $45,500.00 (these are three of the tracts listed in the antenuptial agreement); (b) household furniture valued at $1,950.00; (c) furniture in a rental unit valued at $150.00; and (d) a 1970 Buick LeSabre valued at $1,000.00. The fourth tract of land described in the antenuptial agreement was sold after the marriage but before Mrs. Roberts' death. Thus, all property owned by Mrs. Roberts at the time of the marriage has been accounted for and no property is listed in the estate inventory of which Mr. Roberts was unaware.

While it was nearly eleven years between the date of the antenuptial agreement and the estate inventory, the inventory is at least some evidence of the property owned by Mrs. Roberts prior to the marriage. *McQuate v. White,* 389 S.W.2d 206, 209 (Mo.1965). More significantly, Appellant's point would be well taken only if the inventory revealed substantial assets of which he was not aware when signing the agreement. That is, if the inventory had listed, as Appellant suggests, "$500,000 in Krugerrands," which property was unknown to Appellant when entering into the agreement, he might well have a case for non-disclosure. However, no such unexpected assets are listed in the inventory. The personal representative is under an affirmative duty to list all known property on the inventory. § 473.233, RSMo Supp.1982. We do not understand Mr. Roberts to allege any fraud in the submission of the inventory. Thus, since the inventory of assets in the estate and the explanation of the disposition of the fourth tract of land described in the antenuptial agreement is congruent with Mr. Roberts' acknowledged understanding of his wife's property at the time of their marriage, we cannot say that there was any lack of disclosure to Mr. Roberts of his wife's assets.

## II

We next turn to Appellant's contention that the agreement is not supported by "fair consideration." He asserts that the recited consideration of the marriage and their mutual affection is insufficient, citing *Youngblood.* Without deciding whether such consideration alone is fair consideration under the statute, we conclude that the agreement as a whole sets forth adequate mutual consideration. Among its other provisions, the agreement states:

> "so far as is legally possible by their private act and agreement, all property belonging to either of them at the commencement of the marriage, or coming to them during the marriage, shall be enjoyed by him or her, and be subject to his or her disposition as his or her separate property in the same manner as if the said proposed marriage had never been celebrated ... both may make deeds or wills related particularly to the above described property disposing of same to their children."

Thus, both parties waived any rights they otherwise would have had in the estate of the other party. While it may be true that Mr. Roberts waived an interest in his wife's estate which was greater than what Mrs. Roberts was waiving in his estate, an exact equivalence between the rights being waived has never been required by the law. If there has been full disclosure, as discussed earlier, an "antenuptial contract is not void on grounds the provision for [the

surviving spouse] is inadequate or disproportionate to the deceased spouse's means, or less than [the surviving spouse] would have received in absence of the agreement." *Marshall v. Estate of Marshall,* 529 S.W.2d 914, 918 (Mo.App.1975) *citing Estate of Youngblood v. Youngblood,* 457 S.W.2d 750 (Mo.1970); *McQuate v. White,* 389 S.W.2d 206 (Mo.1965). Thus, the parties' actual waiver of rights in the estate of the other was sufficient consideration to support the agreement.

### III

Finally, Appellant argues that the contract "is ambiguous, and must be construed against the party who drafted it." In support of this argument, Appellant has pointed to various provisions in the agreement which he alleges are in such conflict that the true purpose of the agreement cannot be ascertained. This point is denied.

In determining the meaning or purpose of a contract, the document must be viewed as a whole. Dissection of an agreement into small, unrelated segments causes confusion and misunderstanding that vanish when the component parts are returned to the context of the whole contract. "In interpreting a contract, the importance of viewing the instrument as a whole cannot be minimized, as the sum total of all the separate provisions better expresses the intention of the parties than do isolated provisions lifted out of context." *Buffalow v. Bull,* 619 S.W.2d 913, 923 (Mo.App.1981). While the agreement in this case might have been more tightly drafted, it is our duty to examine the agreement as a whole and determine the meaning and purpose of the agreement based on the ordinary meaning of the language used. Having thus reviewed the antenuptial agreement, we conclude that the clear and unambiguous meaning was that the parties were agreeing to keep their pre-marital estates completely separate following their marriage—as separate "as if the said proposed marriage had never been celebrated." The agreement was drawn at the request of Mrs. Roberts, the party with the larger estate. Therefore, it is not surprising that the agreement describes her property in particular. However, the specific mention of her property does not detract from the further description of "all property belonging to either [party] at the commencement of the marriage."

Further emphasizing what he perceives to be ambiguity in the agreement, Appellant suggests that, although the agreement may have waived his right to elect against the will, it did not waive his right to exempt property, homestead allowance, and family allowance. This argument overlooks the fact that all such allowances must come from the decedent's estate. In this case the agreement provided that their respective estates prior to marriage would remain totally separate. This provision, therefore, also acted to waive such rights as exempt property, family allowance, and homestead allowance in the separate estate of the decedent.

The judgment of the Probate Division is affirmed.