In re ESTATE OF James C. REINSMIDT.

Shirley REINSMIDT, Appellant,

v.

James E. REINSMIDT, Personal Representative, Respondent.

No. 65588.

Missouri Court of Appeals, Eastern District, Division One.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 12, 1995.

Application to Transfer Denied May 30, 1995.

74 

Sally Austin Mills, G. William Wynne, Jr., Clayton, for appellant.

Andrew George Niell, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Shirley Reinsmidt ("wife"), appeals from the judgment of the Circuit Court of the County of St. Louis finding the antenuptial agreement between wife and decedent, James C. Reinsmidt ("husband"), valid and binding, and denying wife's applications for family allowance and for exempt property. We affirm. .

Husband and wife met and became romantically involved in 1976. The two decided to marry in 1981. Both had children from previous marriages. In early 1982, husband and wife met with husband's attorney, Harry Neill, to discuss an antenuptial agreement.[1]

Neill advised wife that he represented husband and not her, and that she could retain her own attorney if she so chose. Neill explained the essence of antenuptial agreements as "what's his is his and what's yours is yours." Neill subsequently mailed a draft of an antenuptial agreement to the couple. Approximately two weeks later, on March 19, 1982, husband and wife signed the agreement.[2]

Attached to the agreement was a list of husband's assets. Referred to as "Exhibit A," the list set out the following: the addresses and descriptions of two parcels of real estate owned by husband; a half interest in a promissory note secured by a deed of trust on a third property; the insurers, policy numbers, and face values of six insurance policies; the number of shares of stock held in various publicly traded corporations;[3] the descriptions and appraisal values of various items of jewelry; and the account numbers and balances of three bank accounts.

Husband and wife married on May 1, 1982. After the marriage, husband and wife kept their property and finances completely separate up until husband's death in 1992. Husband died testate; the total value of his estate was $219,131.75. Husband's will, dated May 3, 1988, devised $20,000 to wife, and granted her the right to occupy one of their marital homes for a period of 18 months. The remainder of husband's estate was devised to his children and other relatives.

On March 24, 1993, wife filed applications for family allowance of $24,000 and for exempt property. Respondent, husband's son and personal representative of the estate ("the estate"), filed the antenuptial agreement in response. A hearing on wife's claims was held in the Probate Division of the St. Louis County Circuit Court on September 20, 1993.

At the hearing, wife testified to the following. She was a high school graduate, attended Washington University for over three years, and worked for the Division of Family Services. Her financial assets at the time of the antenuptial agreement consisted of a 1971 Dodge Aries and a "minimal" checking account. She and husband met with Neill once, to discuss the antenuptial agreement; at that meeting, Neill informed wife he represented husband only, and that she could take the agreement to her own attorney to review.

Wife had the agreement for two weeks before signing it, discussed its contents with husband several times, and read it over a dozen times. Wife could have had the document reviewed by others during that time—including a co-worker who was an attorney—but she never gave the agreement to anyone else to read. Wife understood the words of the agreement and was not coerced into signing it.

Wife claimed husband was "vague" and "secretive" about his finances and assets, and she accordingly did not know the worth of his assets. Wife claimed husband told her the agreement would only be in force for a year

---

1. There is a dispute in the record as to whether husband met with Neill prior to this meeting to discuss antenuptial agreements. Wife testified husband had had a prior meeting with Neill, alone, concerning a possible antenuptial agreement. Neill did not remember such a meeting, and testified the first contact he received from husband on this matter was by phone, when husband called for an appointment.

2. There is a dispute in the record as to the circumstances in which husband and wife signed the agreement. Neill testified husband and wife signed the agreement together, in his office. Wife testified she was alone when she signed and returned the agreement to Neill.

3. None of the stocks listed had values assigned to them.

or two,[4] and that he would make other provisions regarding her monetary and living arrangements upon his death—i.e., he would leave an amount greater than the $20,000 set out in the will. Wife alleged that had she known she would receive only $20,000 in husband's will, she would have handled her savings differently. However, wife admitted husband never promised her a specific sum upon his death.

Neill testified to the following. He met with husband and wife to discuss the antenuptial agreement. Neill characterized the meeting as one merely for informational purposes. He told them that by such an agreement, they would be waiving their rights to family property, support, homestead allowance, and the like. Neill told wife he represented husband only and could not give her any legal advice, though she was welcome to be present at the meeting. According to Neill, wife said at one point, "I know more about [husband]'s properties than he does."

Neill mailed two draft agreements to husband and wife; approximately two weeks later, they came to his office together and signed it before Neill. When asked by Neill, wife said she had consulted a lawyer on the agreement. Husband brought a list of his assets, which were typed up as "Exhibit A" and attached to the agreement. There was no list of wife's assets, because wife believed she did not own enough property to merit one. Wife made no objections to the agreement, nor gave any indication she did not understand it.

Neill admitted he was testifying from memory on things that happened over ten years ago; he had no notes or file on this particular matter. Neill had no idea as to what wife believed or what husband told wife with respect to the future disposition of husband's property. Neill acknowledged the antenuptial agreement inaccurately stated that net worth statements were attached (no such statements were attached) and that there two exhibits (there was only one—Exhibit A).

In rebuttal, wife testified to the following. Wife claimed she never said she knew more

about husband's finances than he did. Wife averred she was never advised by an attorney, and denied she ever told Neill she was. Wife reiterated husband told her the antenuptial agreement would be in effect for a short time, and that there would be additional provisions for her monetary allowance and living arrangements upon his death. When questioned by the court as to why she signed the agreement when it did not include a time limitation or provisions for monetary allowance and living arrangements, wife answered husband reassured her such provisions would be in his will.

On January 25, 1994, the circuit court issued the following findings. Husband made "substantially full disclosure" of his assets. In particular, the stocks listed in Exhibit A were publicly traded and their values were easily ascertainable. Wife's failure to seek independent legal advice before signing the agreement did not in itself invalidate the agreement; wife was sufficiently intelligent to understand, and did understand, the agreement's meaning and the consequences of entering into it. There was insufficient evidence to support a contention of fraud on husband's part. Finally, with reference to husband's gifts to wife and his support of her during the marriage, his provisions for her in his will, and his waiver of his rights to wife's property, the agreement was supported by valid and fair consideration.

On the basis of these findings, the court ruled the agreement was valid and binding and wife waived her right to elect to take against husband's estate. Accordingly, the court denied wife's applications for family allowance and for exempt property. This appeal ensued.

■■■ We affirm the judgment of the court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Scism v. Scism*, 844 S.W.2d 506, 507 (Mo.App.E.D.1992). Factual determinations are the prerogative of the trial court; conflicts in the evidence are for the trial court to resolve, and we must take the

---

4. This testimony was entered over respondent's objection that it was barred by the parol evidence rule. The agreement itself makes no reference to a time limitation.

facts in accordance with the result reached. *In re Estate of Arbeitman,* 886 S.W.2d 644, 646 (Mo.App.E.D.1994). As the finder of fact, the trial court may believe all, part, or none of the testimony presented. *Id.*

Wife raises two points on appeal. For her first point, wife contends the circuit court erred in finding the antenuptial agreement valid, as there was no full disclosure of the nature and extent of husband's property interest nor of the nature and extent of the legal rights waived by wife. We disagree.

■ Pursuant to RSMo § 474.220 (1986), a surviving spouse may waive his or her right of election to take against the deceased spouse's estate by means of a written contract, agreement, or waiver entered into before or after the marriage. The requirements for a valid waiver are (1) full disclosure of the nature and extent of the rights waived, which requires disclosure of the nature and extent of the property interests of the spouses or knowledge equal to such disclosure; and (2) fair consideration under all the circumstances, which requires not only such consideration as would support a simple contract, but consideration that is fair and equitable in the particular circumstances. RSMo § 474.220; *Estate of Youngblood v. Youngblood,* 457 S.W.2d 750, 754–755 (Mo. banc 1970).

■ An antenuptial agreement's recitals that both parties have been advised as to their rights in the other's property establish, *prima facie,* that the surviving spouse was advised as to his or her legal rights. *In re Estate of White,* 718 S.W.2d 185, 187 (Mo. App.S.D.1986). Where the clear and unambiguous language of the agreement states that the parties agree to keep their premarital estates completely separate following their marriage—as separate as if the marriage had never taken place—such language acts to waive the surviving spouse's rights to exempt property and family allowance. *Roberts v. Estate of Roberts,* 664 S.W.2d 634, 639 (Mo.App.W.D.1984). An antenuptial agreement need not specifically identify each of the rights being waived, so long as the instrument as a whole indicates the spouses' intention to waive those rights. *Arbeitman,* 886 S.W.2d at 648.

■ Here, the antenuptial agreement clearly stated husband and wife would retain their property separately and have the right to dispose of their property free from any claims of the other by reason of their marriage, "with the same effect as if no marriage had been consummated between them." Cases construing similar language have upheld the validity of the agreements at issue. *See Roberts,* 664 S.W.2d at 639.

Furthermore, Neill told wife the essence of antenuptial agreements was "what's his is his and what's yours is yours," and explained that by entering such an agreement each party waived the right to homestead allowance, family property, and the like. Wife had ample opportunity to consult an attorney of her own. After reading and rereading the proposed agreement several times and discussing it with husband, wife signed the agreement, including the section stating that both parties entered into the agreement voluntarily and "with full understanding of its provisions." We agree with the circuit court that the agreement was written in clear language, and defer to its finding that wife possessed sufficient intelligence to understand the agreement and the consequences of entering into it. There was sufficient disclosure of the nature and extent of the legal rights waived by wife.

Wife further argues there was not sufficient disclosure of the nature and extent of husband's assets. The following is a synopsis of the law regarding the disclosure of assets in antenuptial agreements:

> No satisfactory rule as to the sufficiency of disclosure or equivalent knowledge can be formulated in concrete terms for this is ordinarily dependent upon the circumstances of the case ... The sufficiency of disclosure is a subjective matter ... If the parties stand in a relatively equal bargaining position and the spouse knows or should know facts sufficient to enable him or her to evaluate the agreement, then the contract may be valid even though the provisions for the survivor are grossly disproportionate to the deceased spouse's means ... The ultimate inquiry is whether the surviving spouse against whom en-

forcement of the agreement is sought has been defrauded or overreached ... So long as the surviving spouse had full knowledge, actual or constructive, of the other's property and the survivor's rights therein, the agreement is not invalid merely because the provision for the waiving spouse is less than the survivor would have received in the absence of the provision ... While it may well be preferable to recite in the agreement all property owned by both parties ..., failure to do so is not fatal to an agreement. (citations omitted). *Estate of Tegeler,* 688 S.W.2d 794, 797 (Mo. App.E.D.1985). Our role here is to examine the record and determine whether substantial evidence supports the circuit court's finding that wife had actual or constructive knowledge of the extent of husband's property. *Id.*

■ We acknowledge the antenuptial agreement inaccurately states that the "net worth" of each party is attached. We are also cognizant of the fact that the values of husband's real estate holdings, promissory note, and stock are not explicitly set out in Exhibit A. We further note wife's testimony that husband was "vague" and "secretive" about his finances.

On the other hand, the record also shows the following. Exhibit A does not omit any assets owned by husband; wife does not allege husband concealed any of his property from her. Wife was familiar with the real estate listed therein, and in fact lived at one of the addresses for a period of time; she could have readily ascertained their value, as well as that of the promissory note. The stocks listed in Exhibit A were publicly traded, their values also readily ascertainable. As for wife's claim husband was secretive about his assets, it conflicts with Neill's testimony that wife declared, "I know more about [husband]'s finances than he does;" it is the trial court's prerogative to believe all, part or none of the testimony presented.[5] *Arbeitman,* 886 S.W.2d at 646.

The antenuptial agreement signed by wife states: "[Wife] acknowledges that the nature and extent of the holdings of [husband] as set forth in Exhibit A attached hereto and by reference made a part hereof have been fully disclosed to her." This evidence, together with the evidence set out above, suffices to support the circuit court's finding that there was substantially full disclosure of husband's assets. *See Gould v. Rafaeli,* 822 S.W.2d 494, 497 (Mo.App.E.D.1991). Substantial evidence supported the circuit court's finding that the nature and extent of husband's assets were fully disclosed to wife.

There was sufficient disclosure of the nature and extent of the legal rights waived by wife, and of the nature and extent of husband's property, to uphold the antenuptial agreement. Wife's first point is denied.

For her second point on appeal, wife contends the antenuptial agreement was unsupported by consideration, and overreached and defrauded her. We again disagree.

■ The mutual waiver of rights by each spouse in the estate of the other is sufficient consideration to support an antenuptial agreement. *Roberts,* 664 S.W.2d at 639; *Matter of Estate of Soper,* 598 S.W.2d 528, 536 (Mo.App.S.D.1980). Even if there is disparity in the worth of the parties' respective estates, "an exact equivalence between the rights being waived has never been required by law." *Roberts,* 664 S.W.2d at 638.

■ The agreement at issue here grants husband and wife "the absolute and unrestricted right to dispose of such separate property free from any claims that may be made by the other by reason of their marriage...." In sections 2 and 4 of the agreement, husband and wife each expressly waive their interest in the estate of the other.[6]

---

5. We note that wife's counsel attested to Neill's veracity at oral argument, acknowledging that Neill—who passed away during the pendency of this appeal—was a widely respected member of the legal community. Counsel stated, "we're not here to dispute [Neill]'s testimony today ..."

6. The antenuptial agreement states in pertinent part:

2. [Wife] hereby waives and releases all right and interest, statutory or otherwise, including, and not limited to, dower, widow's allowance, statutory allowance, distribution in intestacy and right of election to take against the Will of [husband], which she might acquire as the wife, widow, heir-at-law, next-of-kin or distributee of [husband], in his property,

Such mutual releases constitute valid consideration. *Roberts*, 664 S.W.2d at 639; *Soper*, 598 S.W.2d at 536. Furthermore, the disparity in the amount of assets owned by husband and by wife does not render this consideration invalid. If the parties are in relatively equal bargaining positions, and the surviving spouse knows or should know facts sufficient to enable him or her to evaluate the agreement, then the contract may be valid even though the provisions for the survivor are grossly disproportionate to the deceased spouse's means. *Tegeler*, 688 S.W.2d at 797. *See also Roberts*, 664 S.W.2d at 638.

Wife cites *Hosmer v. Hosmer*, 611 S.W.2d 32 (Mo.App.S.D.1980), to support her claim the agreement was one-sided and unfair, and therefore lacking in consideration. We find *Hosmer* distinguishable. That case concerned an agreement whereby the wife waived her rights in the husband's estate, but husband did not correspondingly waive his rights in the wife's estate. *Id.* at 39. Furthermore, there was not full disclosure of the rights waived by the wife nor of the extent of the husband's assets. *Id.* For these reasons, the Southern District invalidated the antenuptial agreement. *Id.*

 Here, both husband and wife mutually agreed to release their rights in the other's property. The circuit court specifically found that husband waived his right to

wife's property. The agreement was supported by sufficient consideration.[7]

▮ Wife also claims husband defrauded her. The only support for this claim is her testimony that husband was "vague" and "secretive" about his finances, that he promised the agreement was temporary and that he would make additional monetary provisions and living arrangements in his will. The circuit court was free to disregard this testimony. *Arbeitman*, 886 S.W.2d at 646. There is no evidence in the record that husband concealed any of his assets from wife. Wife's claim of fraud is unfounded.

The antenuptial agreement was supported by consideration, was not one-sided, and did not act to defraud wife. Wife's second point is denied.

Based on the foregoing, we affirm the judgment of the circuit court upholding the validity of the antenuptial agreement and denying wife's applications for exempt property and family allowance.[8]

REINHARD, P.J., and CRAHAN, J., concur.

---

owned by him at the time of the marriage or acquired by him at any time thereafter, and in his estate upon his death.

\* \* \* \* \* \*

4. [Husband] hereby waives and releases all right and interest, statutory or otherwise, including, and not limited to, courtesy, statutory allowance, distribution in intestacy and right of election to take against the Will of [wife], which he might acquire as the husband, widower, heir-at-law, next-of-kin or distributee of [wife], in her property, owned by her at the time of the marriage or acquired by her at any time thereafter, and in her estate upon her death.

7. Wife argues the circuit court erroneously deemed the gifts and support given to wife by husband subsequent to execution of the antenuptial agreement, and the property left to her in his will, as consideration for the agreement. We agree with wife that this test is improper. In determining whether such an agreement is supported by consideration, courts look only to the

circumstances present at the time the agreement is executed. *See Soper*, 598 S.W.2d at 536; *Roberts*, 664 S.W.2d at 638. Our review of the circumstances present at the time husband and wife executed their agreement leads us to uphold the agreement as supported by fair and equitable consideration.

8. We note the estate filed two motions which we take with the case. The estate first moved for dismissal of wife's appeal on the ground the statement of facts in wife's brief violated Rule 84.04(c). Argumentative statements in the facts, omission of unfavorable evidence, and attempts by counsel to distort or misrepresent the facts, constitute violations of Rule 84.04(c) and warrant dismissal. *Amparan v. Martinez*, 862 S.W.2d 497, 498 (Mo.App.E.D.1993); *Eastin v. Franklin*, 806 S.W.2d 57, 59 (Mo.App.S.D.1991). We do not believe the statement of facts in wife's brief merits dismissal here; we note wife included evidence unfavorable to her case. The estate's motion to dismiss is denied.

The estate also moved to strike several documents from wife's legal file. However, we did not rely in any way upon any of these documents in resolving this dispute. These documents were irrelevant to the decision we render today. We accordingly decline to rule on the estate's motion to strike.