In the ESTATE OF Brenda J.
ROBERTSON, Deceased.

Betty L. Hale, Personal Representative
for the Estate of Brenda J. Robertson,
Petitioner–Respondent,

v.

David William Robertson, Respondent–
Appellant.

No. 23867.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 1, 2001.

Petition for Rehearing and Transfer Denied
Oct. 23, 2001.

Application for Transfer Denied
Dec. 18, 2001.

Daniel B. Johnson, Springfield, for Appellant.

Robert W. Stillings, Springfield, for Respondent.

PREWITT, Judge.

David William Robertson ("Appellant") appeals from a judgment entered August 17, 2000 in favor of Betty L. Hale, personal

representative of the estate of Brenda J. Robertson, ("Respondent") finding an ante-nuptial agreement executed by Appellant and Brenda J. Robertson ("Decedent") valid and enforceable, thereby barring Appellant as surviving spouse from receiving any marital rights in Decedent's estate. Prior to Respondent filing her petition, Appellant filed an election as surviving spouse, including petition for share of omitted spouse and applications as surviving spouse for exempt property, family, and homestead allowances.

Decedent and Appellant met in 1996, were engaged in early 1997, and married on April 19, 1997. On March 16, 1995, Decedent executed a will, leaving the residuary of her estate to her parents. The will was never modified or replaced prior to Decedent's death on December 20, 1998.

Prior to the marriage Appellant informed Decedent of his difficulties with the Internal Revenue Service (IRS) and they discussed protecting Decedent's assets through "paperwork" Decedent would have prepared. Four days prior to the marriage, Decedent met with her attorney; he prepared the ante-nuptial agreement and Decedent signed it. After signing the agreement at her attorney's office, Decedent contacted Appellant and they met at her accountant's office where Appellant signed the document. Appellant admitted at trial that he did not read the document before signing it nor did he consult with an attorney regarding the document's contents or consequences. Appellant neither received a copy of the document (until after Decedent's death) nor did he request one.

After the marriage, various items (including a boat) were purchased by Decedent for Appellant and remain in his possession, yet were titled in Decedent's name because of Appellant's debt to the IRS. Within a few months following the marriage, a business called Robertson Construction was formed, in which Decedent was owner and Appellant primary employee. Following Decedent's death, Appellant retained possession of equipment and vehicles associated with the business.

At trial Appellant admitted to familiarity with signing contracts, having signed at least two contracts on behalf of Robertson Construction totaling over $200,000. With regard to the construction contracts, Appellant had taken the time to read them before signing and expected to be bound by provisions in those contracts, regardless of whether or not he had read them. Appellant has a tenth-grade education and Decedent received training as a registered nurse.

The ante-nuptial agreement is eight pages in length and includes Schedule 1, which lists items of real and personal property owned by Decedent. The agreement contained no listing of property owned by Appellant. Decedent's attorney testified that he had originally prepared the agreement to include two schedules of property listings (one for Decedent and one for Appellant), but that the final agreement contained only a listing of Decedent's property because Decedent had noted that Appellant had no items he wished to list. At the time of the execution of the agreement, Appellant had some property, including a pick-up and construction materials/equipment.

Schedule 1 of the ante-nuptial agreement was not an all-inclusive list of Decedent's property. Missing were two bank accounts (one business and one personal) held by Decedent that cumulatively maintained balances over $100,000. However, both of these accounts were payable on death, one to each of decedent's parents, and the accounts' status were never changed. No values were given for any of the items on Schedule 1.

Decedent died on December 20, 1998 and her will was admitted to probate on January 15, 1999. Following Decedent's death, Appellant filed the previously mentioned omitted and surviving spouse petitions/applications, leading to filing of a petition for declaratory judgment by Respondent.[1]

Before discussing Appellant's point relied on, two items are of note. First, Respondent filed a motion to dismiss the appeal based on Appellant's lack of compliance with Rule 84.04. That motion was taken with the appeal and was denied under a separate order of this court; thus, it will not be discussed here.

■■■ Second, Appellant included additional points relied on in his reply brief. Those points were not considered. "Assignments of error set forth for the first time in the reply brief do not present issues for appellate review." *Application of Gilbert,* 563 S.W.2d 768, 771 (Mo.banc 1978); *See also In re Marriage of Hunter,* 614 S.W.2d 277, 278 (Mo.App.1981) (since this "error [validity of an ante-nuptial agreement] was not referred to in the appellant's initial brief we cannot consider it.")

We turn now to the point relied on Appellant raised in his initial brief. Appellant claims that the ante-nuptial agreement is neither valid nor enforceable, and is in fact unconscionable and unfairly made for the following four reasons:

1. Appellant was not represented by counsel,
2. Appellant received the ante-nuptial agreement only four days prior to wedding,
3. Decedent did not make a full disclosure of her assets, and

4. For the assets listed, no actual values were given.

■■■ The appellate court is required by Rule 84.13 to affirm the judgment of the trial court, "unless it is against the weight of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law." *Garner v. Hubbs,* 17 S.W.3d 922, 926 (Mo.App.2000). The trial judge's determination as to the credibility of any witnesses is to be given due weight by the appellate court. *See In re Marriage of Lewis,* 808 S.W.2d 919, 922 (Mo.App.1991).

■■■ Both Appellant and Respondent cite *Hosmer v. Hosmer,* 611 S.W.2d 32 (Mo.App.1980), a Southern District case that addresses validity standards for ante-nuptial agreements. The *Hosmer* case involved an ante-nuptial agreement in which each spouse waived all marital rights, including rights to inheritance from the other spouse. *See id.* at 35. According to *Hosmer,* validity of an ante-nuptial agreement is governed by rules that "are unique and are distinct from the requirements for the execution of an ordinary contract." *Id.* This is particularly true in terms of consideration, where an ante-nuptial agreement requires more than that necessary for a simple contract, in "that the consideration moving to the spouse or prospective spouse surrendering marital rights [is to] be fair and equitable in the particular circumstances." *Id.*

■■■ Here, the judgment specifically noted that "[t]he consideration received by [Appellant] for the execution of the ante-nuptial agreement was fair consideration under all the circumstances." There is sufficient evidence in the record to account

---

1. There is no issue on appeal regarding the propriety of Respondent using declaratory judgment.

for the court's determination. In particular, the court may have decided that the provisions and circumstances of the ante-nuptial agreement provided Appellant with consideration related to his money problems with the IRS. In addition, the court may have found that the vehicle/construction equipment purchased by Decedent and titled in her name, yet used and retained by Appellant, provided appropriate consideration for Appellant's being bound by the provisions of the agreement.

 According to *Hosmer*, in determining the validity of an ante-nuptial agreement, "[t]he ultimate inquiry is whether the surviving spouse against whom enforcement of the agreement is sought has been defrauded or over-reached." *Id.* Whether the surviving spouse had full knowledge or whether there had been full disclosure of the other spouse's property is important to that determination. *See id.* Full knowledge is met through either actual or constructive knowledge. *See id.* The level of disclosure must be such that the spouse is able to make an informed decision; thus, the "spouse should be substantially advised of the other spouse's property or have knowledge of those facts." *Lewis*, 808 S.W.2d at 923. In addition, full disclosure should include "the spouse's legal rights [as well as] the nature and extent of the property of the other spouse." *Id.* As discussed below, there was substantial evidence upon which the trial court could have relied in its determination that full disclosure had been made to Appellant.

Appellant was not defrauded or over-reached. To the contrary, according to his testimony, he and the Decedent discussed using some sort of document to protect her assets. It was also apparent that Decedent owned other property or was a partner in another business beyond the one listed on Schedule 1, and Appellant testi-

fied that he had awareness of such business(es). As for the two bank accounts that were not listed on Schedule 1 of the ante-nuptial agreement, it is evident from Appellant's testimony that he had at least constructive knowledge of such accounts, or at least the fact that one who was a partner in one or more businesses would likely have such banking accounts.

The two bank accounts were also payable on death to parties other than Appellant. If an account is signified as payable on death, when the account holder dies, "the account shall become the property of the person named as the 'pay on death' person (in the instant case, Decedent's mother for one account and father for the other)." § 369.186, RSMo Supp.1996. Thus, Respondent makes the argument that whether they were listed on Schedule 1 is of no consequence. However, Decedent could have changed the pay on death status of the accounts at any time prior to her death; thus, the fact that Appellant was not the pay on death person at the time of the execution of the ante-nuptial agreement is not reason in and of itself to excuse the lack of disclosure.

 With regard to full disclosure of property, "the absence thereof is not necessarily fatal to the agreement." *Hosmer*, 611 S.W.2d at 35. More importantly, Appellant testified that he did not read the document. Thus, what property was listed or was not listed did not affect his decision to sign the document. By Appellant's own admission, the level of disclosure of Decedent's assets was not significant to his actions. Thus, whether the unlisted accounts were payable on death was not a factor in our review.

Appellant makes reference to the "mere four days" between the signing of the ante-nuptial agreement and the wedding. Case law initially appears to provide some backing for Appellant's assertion that a

short time span between signing or presentment of the document and the actual wedding may affect the validity of the ante-nuptial agreement. A Western District case cited by Appellant did involve similar facts: the parties had discussed such documentation to protect assets, the attorney of one spouse (the respondent in that case) prepared the document, the respondent had many more assets than the appellant who later challenged the validity of the agreement, only the respondent's assets were listed, no values were included for the listed property, some of the respondent's property was not listed, the appellant was not represented nor did she seek advice of her own attorney, and the appellant only received the document for review a few days before the wedding or being asked to sign it. *See Ferry v. Ferry,* 586 S.W.2d 782 (Mo.App.1979). The appellate court in *Ferry* specifically noted several factors in its decision to invalidate the agreement, including that appellant was not represented by independent counsel, that appellant only had a few days to read the document, that there was not full disclosure of respondent's assets, and that no actual values of the assets that were listed were included. *See id.* at 787. The court found these factors to "bear significant indicia of overreaching." *Id.* The court also found a disparity in consideration between the two parties, since the respondent brought so few assets with her to the marriage. *See id.*

■ With the factors listed above, it could appear that Appellant here would have a strong case on appeal to question the trial court's judgment and find the ante-nuptial agreement fundamentally unfair and unconscionable. However, it is important to note that the court in *Ferry* was considering two aspects or consequences of the ante-nuptial agreement: effect of agreement on death and effect on

dissolution of marriage. *See id.* at 785. The decision of the court makes it clear that it is using a higher level of scrutiny as it determined the validity of the agreement in terms of its effect on property rights and maintenance in a dissolution proceeding. All of the factors that led to a determination of overreaching were related to the rights to property upon dissolution of marriage. *See id.* The ante-nuptial agreement in *Ferry* also referred to restriction of inheritance and survivorship rights upon death of a spouse and the court notes that particular aspect of the agreement was not under consideration in the case and that courts have "a different attitude toward ante-nuptial agreements contingent on death." *Id.* A court "finds favor" in such agreements since they "promote domestic harmony." *Id.* In addition, the *Ferry* court noted that making parties bound by provisions of an ante-nuptial agreement only if the agreement was conscionable and fairly made "afford[ed] protection to the unwary and ill-informed spouse." *Id.* at 786. In the case at bar, Appellant's own admissions regarding his familiarity with contracts and the consequences of not reading them or not seeking counsel for their review, gave the trial court a substantial and sufficient basis on which to find that Appellant was neither unwary nor ill-informed.

Even if Appellant was ill-informed, by his own admission the level of disclosure of property and the lack of values on Schedule 1 did not affect his decision to sign the document. Appellant admitted that he did not read the document. Whether full disclosure was made or values were listed were of no issue to the Appellant at the time he signed the document, and if the trial court gave weight to those factors in its decision, it was appropriate to do so.

There were apparent differences between Appellant and Respondent as to

who has the burden of proof when the validity of an ante-nuptial agreement is tested. However, similar to *Hosmer*, which party had the burden did not affect the judgment in the case. *See Hosmer*, 611 S.W.2d at 36.

The judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.

