Tony Wayne PULLEY, Respondent,

v.

Deborah Kay SHORT,
et al., Appellants.

No. WD 68257.

Missouri Court of Appeals,
Western District.

Sept. 2, 2008.

George E. Proctor, Jr., Liberty, MO, for appellant.

Gary R. Bradley, Lexington, MO, for respondent.

Before Div. II: HOLLIGER, P.J., LOWENSTEIN and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

This appeal stems from a suit involving a will contest and an antenuptial agreement brought by a surviving spouse. The surviving husband was omitted from his deceased wife's will. He brought suit asserting that he was a pretermitted spouse, an antenuptial agreement barring him from asserting his rights to the assets of a revocable trust was void and unenforceable, and the assets of the revocable trust should be brought into the probate estate. The trial court entered judgment in favor of the husband on all counts. This appeal followed.

## I. Factual Background

Lois Kell ("Lois") and the respondent, Tony Pulley ("Respondent" or "Tony") were married on October 12, 1986. Tony was Lois's second husband. Her first husband, Gordon Kell, had died four months previously, after almost forty years of marriage. Lois and Gordon had two grown children, Deborah Short (hereinafter "Deborah" or "Appellant") and David Kell. Lois and Gordon had accumulated substantial assets, primarily real estate, during their marriage. In October 1986, Lois was sixty-five years old and had retired from teaching school.

Tony Pulley was forty-two years old when he and Lois married. The October 12, 1986, marriage was his third. He had four children from his first marriage. His second marriage was dissolved in May 1986, five months before he married Lois. At the time of the marriage to Lois, Tony was working as a certified nurse assistant at a Kansas City nursing home where he also resided. He had a number of convictions for driving while intoxicated. His driver's license had been revoked. He was also subject to an outstanding judgment for unpaid child support.

Prior to her marriage to Tony, Lois, with assistance of counsel, created a revocable trust, ("the Trust") dated October 3, 1986, pursuant to Section 456.010 RSMo.[1]

1. All statutory references are to RSMo (2000) unless otherwise specified. Section 456.010

Lois was the sole trustee of the Trust during her lifetime. Her daughter, Deborah, was named the successor trustee, and Lois's children, Deborah and David, were the beneficiaries of the Trust. The Trust was funded with properties acquired by Lois and Gordon Kell during their marriage and with Lois's personal property. The legal descriptions of fifteen parcels of real property were appended as an exhibit to the Trust document.

Lois's attorney also drafted a prenuptial agreement, dated October 12, 1986 ("the Agreement"). The prenuptial agreement recited that Lois had provided Tony with a copy of the Trust agreement. Under the Agreement, Tony waived any rights he may have, in the event of Lois's death, to a child's share of the Trust assets and agreed that the Agreement could be used against him should he make any claim on the Trust assets. In return, Lois waived any rights she had in assets Tony brought into the marriage.

Although the Agreement explained that Tony "has a right to have the results of his execution of this Agreement explained to him by an attorney of his choice," Tony did not consult an attorney or seek any legal advice. Rather, he signed the Agreement, and his signature was notarized.

For the first five years of marriage, Tony had significant problems with alcohol abuse. He only worked outside the home briefly as a nursing assistant in a nursing home. He then worked with Lois to rehabilitate properties she purchased and prepare them for rental.

Lois paid all the expenses of the household, the farms, and the rental units. Tony did not contribute financially to the marriage until he began to receive disability benefits. Lois demanded he contribute

$300 per month to help with household expenses.

Until her death in September 2004, Lois transferred properties in and out of the Trust as they were purchased or sold, keeping the properties separate from her personal estate, and titled these properties in the name of the Trust. Both Deborah and Tony testified that Lois did not disclose her financial dealings to her family. Indeed, Lois's children, Deborah and David, did not know anything about the Trust beyond the fact that their mother had established a trust and that they were the beneficiaries.

## II. Procedural Posture

Lois Kell died in September 2004. Lois's will was admitted to probate. In her will, executed in January 1981, Lois bequeathed and devised all of her property to her then husband, Gordon. Should Gordon predecease Lois, their children, Deborah and David, would take under the will.

Tony's consolidated petitions named Lois's estate, the Trust, and Lois's children, Deborah and David, the appellants, as defendants. Tony sought a will contest, imposition of a trust, damages, discovery of assets, injunction, and an accounting. The court entered judgment on February 26, 2007, and an amended judgment for purposes of appeal on March 7, 2007.

In its judgment, the court found in favor of Pulley on all counts. The trial court did not make, and the parties did not request, findings of fact. The trial court concluded that Pulley was a pretermitted spouse, pursuant to Section 474.235 [2] and awarded him an intestate share of Lois's estate-specifically one half of all property in the probate estate. The court also invalidated the Agreement, finding it to be void and

was repealed in 2004.

2. As set out *infra*, the section provides for an omitted, surviving spouse.

unenforceable. The trial court predicated its decision on: (1) lack of financial consideration paid to Pulley; (2) absence of proof of disclosure of assets prior to execution of the Agreement; (3) absence of legal counsel for Pulley; (4) the Agreement was prepared by counsel for Lois and not reviewed by Pulley's counsel; (5) the special relationship between Lois and Pulley established before she created the Trust and prenuptial Agreement.

The court found, further, that the Trust was an antenuptial contract that had, as its primary purpose, the defeat of Tony's marital rights, and was, therefore, a fraudulent transfer within the meaning of the Missouri Non–Probate Transfers Law, Sections 461.071 and 461.300. The court ordered that the property of the Trust be made available to satisfy probate claims, expenses, statutory allowances, and other probate expenses. The court also concluded that 156 acres of property, with an appraised value of $150,000 to $230,000, was not properly made part of the Trust and should be included in the probate estate.

The judgment ordered that Pulley receive an undivided one-half of all real and personal property in the Trust relating back to April 2005. This appeal followed.

### III. DISCUSSION

Deborah's two points relied on make three distinct claims. In her first claim, Deborah contends the trial court erred in finding Tony was a pretermitted spouse within the meaning of Section 474.235. She next argues that the trial court erred in invalidating the Agreement. She contends, as a third claim, that the Trust was improperly brought into the probate estate.

■ This court reviews a court tried case under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be affirmed unless the judgment is not supported by substantial evidence, is against the evidence, or misstates or misapplies the law. *Id.*

### A. PRETERMITTED SPOUSE

■ Section 474.235 provides that "[i]f a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will." The surviving spouse is not entitled to an intestate share if it appears from the will that the omission was intentional or if the testator provided for the spouse by transfer outside the will in lieu of a testamentary provision.

Lois failed to make a testamentary provision for her surviving spouse. Lois's will was prepared prior to Gordon's death and was not amended after his death or during her marriage to Tony. The will does not reflect that the omission was intentional, and the record does not reflect that Lois made any non-testamentary provision for Tony. Accordingly, Tony was a pretermitted spouse within the meaning of 474.235 and is entitled to an intestate share of the probate estate. Point denied.

### B. ANTENUPTIAL AGREEMENT

Deborah next contends that the trial court erred in finding the Agreement to be void and unenforceable. The trial court found the Agreement unenforceable because Pulley had not received any financial consideration in exchange for his waiver of rights, there was an absence of proof of disclosure of the relative financial positions of the parties, and Pulley was not afforded legal counsel nor had the opportunity to consult counsel.

■ Section 474.220 provides that a spouse's right to elect against a will may be waived "after full disclosure of the na-

ture and extent of the right, [and] if the thing or the promise given to the waiving party is a fair consideration under all the circumstances." An antenuptial agreement will be enforced if it is entered into freely, fairly, and understandingly, with full disclosure, and the agreement is not unconscionable. *Kester v. Kester,* 108 S.W.3d 213, 218 (Mo.App.2003). "[T]he ultimate inquiry in cases of this kind is whether the surviving spouse against whom enforcement of the agreement is sought has been defrauded or over-reached." *Estate of Youngblood v. Youngblood,* 457 S.W.2d 750, 756 (Mo. banc 1970).

The first analysis is whether there has been full and fair disclosure. *Roberts v. Estate of Roberts,* 664 S.W.2d 634, 637 (Mo.App.1984). "An antenuptial agreement need not specifically identify each of the rights being waived, so long as the instrument as a whole indicates the spouse's intention to waive those rights." *In re Estate of Reinsmidt,* 897 S.W.2d 73, 77 (Mo.App.1995).

The purpose of full disclosure is to permit each spouse to make a meaningful and informed decision whether to waive his rights against the will of his spouse. *McMullin v. McMullin,* 926 S.W.2d 108, 111 (Mo.App.1996). "No satisfactory rule as to the sufficiency of disclosure or equivalent knowledge can be formulated on concrete terms, for this is ordinarily dependent on the circumstances of the case." *Youngblood,* 457 S.W.2d at 757. Each spouse is charged with disclosing the nature and extent of their assets. *Id.* at 756. Actual knowledge is not required but a spouse may be charged with such knowledge where he or she knew sufficient facts to evaluate the extent and nature of the property. *Id.* Where one spouse has actual or constructive knowledge of the other spouse's property, the "failure to fully disclose the nature and extent of all his prop-

erty does not invalidate [the] waiver." *In re Estate of Tegeler,* 688 S.W.2d 794, 799 (Mo.App.1985).

Here, the trial court found the Agreement void and unenforceable because there was an "absence of any proof of disclosure of the relative financial positions of the parties." This court first notes that "proof of disclosure of the relative financial positions of the parties" is not required for an antenuptial agreement to be enforceable. Rather, the inquiry is whether there were sufficient facts from which the spouse, against whom enforcement is sought, could evaluate the extent and nature of the property. *Id.*

The testimony at trial indicated that Lois and Tony dated for approximately three months before Tony asked her to marry him. During that time, Lois and Tony toured her real estate properties in and about the City of Richmond. Lois indicated the acreage of the properties and whether they were rented or not rented. The bulk of Lois's wealth lay in those properties. An exhibit reciting the legal descriptions of fifteen properties plus the value of Lois's personal property was attached to the trust document, a copy of which, the antenuptial agreement recited, was provided to Tony. This information was sufficient to charge Tony with knowledge of the extent and nature of Lois's assets.

The evidence established that Lois disclosed the nature and extent of her assets such that Tony could evaluate the rights he was waiving by executing the Agreement. The trial court's conclusion that there was no "proof of disclosure" is not supported by substantial evidence.

The court next concluded that the Agreement was invalid because Pulley did not receive any financial consideration in exchange for his waiver of rights. Fi-

nancial consideration is not required to support an antenuptial agreement. Rather the inquiry is whether the waiving party received "fair consideration under all the circumstances." Section 474.220; *Reinsmidt*, 897 S.W.2d at 77. The mutual waiver of rights to the other spouse's assets is sufficient consideration to support an antenuptial agreement. *Roberts*, 664 S.W.2d at 638.

Here, in exchange for Tony's waiver of rights to Lois's property in the Trust, Lois agreed to waive any rights she may have had in Tony's assets. The disparity in the relative wealth of Lois and Tony does not invalidate the mutual waiver as the law does not require an exact equivalence between the rights being waived. *Estate of Tegeler*, 688 S.W.2d at 797 (Mo.App.1985).

In that the trial court invalidated the Agreement for lack of financial consideration, the trial court misapplied the law. The mutual waiver of rights was sufficient to support the antenuptial agreement.

 The trial court next invalidated the Agreement based on the circumstances surrounding its execution. The court found, specifically, that the Agreement was drafted by Lois's counsel, signed in Lois's attorney's office, no legal counsel was afforded to Tony, and Tony did not have the opportunity to seek legal advice.

 Fairness of execution goes to whether an agreement is conscionable or fundamentally unfair and must be evaluated in light of the circumstances at the time of execution. *In re Estate of Weinsaft*, 647 S.W.2d 179, 182 (Mo.App.1983). The determination of whether the execution of an antenuptial agreement was fair is, again, highly dependent on the particular circumstances of each case.

In *Estate of Robertson*, 60 S.W.3d 686 (Mo.App.2001), Wife had substantial assets and Husband had financial baggage, including some difficulties with the Internal Revenue Service. *Id.* at 688. Husband had a tenth grade education and Wife was a registered nurse. *Id.* Prior to the marriage, Husband and Wife discussed some sort of document to protect Wife's assets. *Id.* at 690. Shortly before the wedding, Wife had her attorney prepare an agreement in which Husband waived any marital rights he had in Wife's estate. *Id.* Husband was presented with a copy of the agreement four days prior to the wedding in the office of wife's accountant. *Id.* at 688. Husband did not consult with an attorney or even read the document prior to signing. *Id.* Upon Wife's death, Husband sought to set aside the antenuptial agreement, arguing that he was not represented by counsel, he received the agreement four days prior to the wedding, Wife did not disclose all of her assets, and she failed to provide values for the assets disclosed. *Id.* at 689.

The court found that, under the circumstances, Husband was not overreached. *Id.* at 690. The court noted that Husband didn't read the agreement, did not voice any concerns about the agreement, and did not seek legal advice about the consequences of executing the agreement. *Id.* at 691. In that Husband did not voice concerns about the antenuptial agreement at the time of execution or seek to protect himself in any way, he could not point to the circumstances of the execution and claim he was overreached.

The court distinguished the holding in another case with substantially similar facts, *Ferry v. Ferry*, 586 S.W.2d 782 (Mo. App.1979), pointing out that *Ferry* involved the effect of an antenuptial agreement on dissolution, necessitating a higher level of scrutiny. *Robertson*, 60 S.W.3d at 691. *Ferry* distinguished the close scrutiny given antenuptial agreements in dissolutions from that given antenuptial agreements as applied to estates. *Ferry*, 586

S.W.2d at 785. The court noted that although courts have historically viewed antenuptial agreements in dissolutions with disfavor, "[t]he decisions express a different attitude toward antenuptial agreements contingent on death, an arrangement which finds favor premised in part on an assumption that such agreements promote domestic harmony." *Id.* In *Ferry,* although the court found the Antenuptial Agreement to be unenforceable, all the factors that led to the conclusion that the wife was overreached pertained to the rights to property upon dissolution. *Id.*

Under the facts in the case at bar, this court is inclined to find *Robertson* persuasive. Tony entered the marriage with financial baggage, including a child support order and a judgment for unpaid child support, while Lois had assets she wished to protect. Prior to asking her attorney to draft the documents, Lois expressed to Tony her desire to preserve her property for her children. Lois and Tony toured her properties, and Lois described the status of each property. Tony admitted that he did not read the agreement, claiming, even in the face of substantial evidence to the contrary, that he could not read. Tony did not seek legal counsel but admitted that no one stopped him from doing so. He conceded that he signed the Agreement freely and voluntarily and could have refused to sign and postponed the marriage. Like the Husband in *Robertson,* Tony did nothing to protect himself at the time of the execution of the document but, rather, waited until Lois was deceased to assert that he had been overreached. To the extent that the trial court based its invalidation of the Agreement on its conclusion that Tony was not afforded and did not seek independent legal counsel, the judgment misstated the law.

Accordingly, this court finds the trial court erred in invalidating the antenuptial agreement in which Tony waived his rights to the assets of the Trust. That portion of the judgment finding the antenuptial agreement invalid and unenforceable is hereby reversed.

The trial court did not err in finding Tony a pretermitted spouse pursuant to Section 474.235 and awarding him a one-half interest in all probate property in the probate estate. The trial court erred in finding the antenuptial agreement to be unenforceable. As, pursuant to the enforceable antenuptial agreement, Tony waived any rights he had in the Trust assets, that portion of the judgment granting Tony an undivided one-half interest in the assets of the Trust is hereby reversed. The case is remanded to the trial court to enter judgment in accordance with this opinion.

All Concur.